418 So.2d 524 (1982)
Leonard B. JACKS
v.
BANISTER PIPELINES AMERICA, et al.
No. 81-C-2296.
Supreme Court of Louisiana.
June 21, 1982.
Rehearing Denied September 3, 1982.
*525 Roy Maughan, and Elliott W. Atkinson, Maughan, Atkinson & Martin, Ltd., Baton Rouge, for plaintiff-applicant.
*526 L. Michael Cooper, Durrett, Hardin, Hunter, Dameron & Frithcie, Baton Rouge, for defendant-respondent.
DENNIS, Justice.
Following the Workers' Compensation statute's provisions for total and partial disability, there is a schedule of specific losses accompanied by a provision for the number of weeks of compensation payable in each instance. In this case we are called upon to determine the proper mode of compensation when an employee, who suffered the loss of an eye, qualifies for both a specific loss award and a permanent partial disability judgment. The trial and appellate courts held, in effect, that the employee is entitled only to compensation for his partial disability. We modify this decision. Although the employee may not recover compensation for both his specific loss and his permanent partial disability, he is entitled to the more favorable of the two remedies. In a case in which it cannot be predicted which remedy will be more favorable, the employee should be awarded compensation for his specific loss as a minimum with reservation of his right to recover under the partial disability provision in the event it proves to be the more favorable.
The plaintiff, Leonard B. Jacks, was employed by Banister Pipelines America as an equipment mechanic and utility welder. The record reveals that on January 16,1979, Jacks suffered an injury to his right eye which resulted in a permanent loss of vision in that eye. He missed three weeks of work for which he received temporary total disability benefits.[1] Jacks returned to work and has continued to work as a pipeline mechanic and utility welder for Banister and other employers at the same or greater wages than he was being paid at the time of the accident.
On November 20, 1979, the plaintiff sent a written demand for further compensation to the Insurance Company of North America (INA), the employer's compensation insurer. INA notified plaintiff of its intention to pay schedule benefits and commenced payment of those benefits on January 22, 1980.
Suit was filed on behalf of plaintiff on November 23, 1979, requesting total and permanent disability benefits, penalties, and attorney's fees. The trial court made the following findings of fact:
"The Court finds as a fact that Mr. Jacks is unable to perform certain duties required by his job as well as he could before the accident. Those duties include climbing, walking on irregular work surfaces, working or driving at night and operating equipment. Further, Mr. Jacks is no longer able to perform precision welding, to catch tools thrown by his job helper, or to read numbers on certain parts. As a result of these handicaps, the Court finds that Mr. Jacks is unable to compete with able-bodied men in the same job market for which he was previously suited and thus is permanently, partially disabled."
The trial court ordered defendants to pay weekly compensation benefits for permanent partial disability under La.R.S. 23:1221(3) subject to a credit for compensation previously paid.[2] The judgment, however, did not specify whether the previous payments should be deducted from future compensation on a dollar-for-dollar or a *527 week-for-week basis. Penalties and attorney's fees were denied. Both plaintiff and defendants appealed. The court of appeal affirmed the trial court's judgment. 396 So.2d 604 (La.App. 1st Cir. 1981). This court granted certiorari to review the correctness of that decision.
In his application to this court, plaintiff contends that the courts below erred in not allowing recovery for a schedule loss under La.R.S. 23:1221(4) in addition to the award of benefits for partial disability under La. R.S. 23:1221(3). Plaintiff's loss of sight in one eye would entitle him to full compensation for one hundred weeks under the schedule of specific losses, La.R.S. 23:1221(4)(i). Because he received only 72 weeks of compensation, plaintiff contends that he is entitled to twenty-eight more weeks of compensation. Additionally, he contends that he is entitled to 450 weeks of compensation under La.R.S. 23:1221(3) for permanent partial disability with no credit applied against those payments for the 100 weeks of benefits received under the schedule of specific losses. In the alternative, he argues that if a credit is allowed, it should be on a week-for-week rather than a dollar-for-dollar basis.
La.R.S. 23:1221 provides in relevant part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
* * * * * *
(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, ... during the period of disability, but not beyond a maximum of ... four hundred fifty weeks for such partial disability ...
(4) In the following cases, the compensation shall be as follows:
* * * * * *
(i) For the loss of an eye, sixty-six and two-thirds per centum of wages during one hundred weeks.
The statute does not explicate the relationship between the specific loss schedule and the total and partial disability provisions. In a case in which a specific loss also results in total or partial disability for the worker, the act does not give either remedy priority or state whether the remedies are cumulative or optional. The interaction of judicial opinions and legislative amendments over the lifetime of the act presents a checkered pattern of interpretations on the question of disability vis a vis schedule loss provisions. W. Malone & H. Johnson, Workers' Compensation in 13 Louisiana Civil Law Treatise, § 252 (1980); Comment, The Conflict Between the Disability and Specific Injury Clauses of the Louisiana Workmen's Compensation Act, 11 Tul.L. Rev. 86 (1936).
The prevailing interpretation is that an employee may not recover compensation both for a total or partial disability and for a specific loss but he may recover for one or the other, the employee being permitted recovery under whichever provision affords him greater compensation.[3] This rule is a workable one in cases which present a clearcut choice between remedies affording *528 fixed amounts of compensation. In the present case, however, in which the employee continued to earn wages at the same rate despite his partial disability, it cannot be predicted which provision will afford him greater compensation. Consequently, we must reexamine the statute, its history and its underlying policies to extract the precept to be applied in the present case.
Historical evidence indicates that the schedules of specific losses contained in workers' compensation acts generally were not intended to be a departure from or an exception to the wage-loss principle. The typical schedule, limited to obvious and easily-provable losses of members, was justified on two grounds: the gravity of the impairment supported a conclusive presumption that actual wage loss would sooner or later result; and the conspicuousness of the loss guaranteed that awards could be made with no controversy whatever. 2 Larson, Workmen's Compensation Law, § 57.14(c) p. 10-36 (1981). See also, W. Schneider, The Law of Workmen's Compensation § 408 (2d ed. 1932); A. Honnold, Workmen's Compensation, § 162 (1918); N. Dosker, Manual of Compensation Law § 140 (1917).
The legislative aim of the Louisiana list of specific losses is consistent with the purposes of the schedules generally. The list of specific losses serves to prevent litigation by providing for awards in definite amounts based on obvious physical mutilations. The Louisiana act establishes a conclusive presumption that victims suffering the losses set forth in the schedule will sooner or later be permanently partially disabled.[4] See Comment, The Conflict Between the Disability and Specific Injury Clauses of the Louisiana Workmen's Compensation Act, 11 Tul.L.Rev. 86 (1936).
The general disability provisions and the specific loss provisions, such as the award of 100 weeks of compensation for the loss of an eye, therefore, are parallel remedies designed to compensate an employee for his loss of earning capacity. The pervasive canon of statutory construction is that, where two remedies are created side by side in a statute, the claimant should have the benefit of the more favorable. 2 Larson, supra, at § 58.25 p. 10-285. See also, Farrens Tree Surgeons v. Winkles, 334 So.2d 569 (Fla. 1976); Camis v. Industrial Commission, 4 Ariz.App. 312, 420 P.2d 35 (1966); Holcombe v. Fireman's Fund Insurance Co., 102 Ga.App. 587, 116 S.E.2d 891 (1960).
Our prevailing interpretation, namely, that an employee may recover under whichever provision affords him greater compensation, therefore, is consistent with the broad historical perspective of the schedule provisions. In most cases, this precept without further interpretation, provides a ready solution in keeping with the history and purpose of the schedule and disability provisions. In the present case, however, in which the employee continued to earn wages at the same rate despite his partial disability, determination of the more favorable remedy remained problematic at the time of trial. If the employee should become unemployable because of his partial disability, the disability provision offers a greater number of weeks of compensation. On the other hand, if he continues to be able and willing to work, and his wages do not decline, greater compensation is afforded by the specific loss provision. Accordingly, in such a case, further interpretation of our jurisprudential precept is necessary to effectuate the purposes of the statute and to prevent injustice to the claimant. In order to assure that the employee is permitted to recover under whichever provision affords him greater compensation, he *529 should be awarded compensation for the specific loss as a minimum with reservation of his right to recover under the partial disability provision in the event it proves to be the more favorable.[5]
If the employer is later required to pay the worker compensation for his partial disability, because it proves to be the more favorable remedy, the employer will be entitled to subtract the 100 weeks of compensation paid for the specific loss from the maximum number of weeks for which partial disability compensation is payable. This method of crediting the employer with payment under the specific loss schedule is derived by analogy from several provisions of the worker's compensation statute. The partial disability provision states that the employer is entitled to deduct one week from the maximum number of weeks for which compensation is payable for each week during which the employee is paid any partial disability compensation. La.R.S. 23:1221(3). If the employer is entitled to such a credit for each week in which he pays partial disability compensation, no matter how small the amount, he should receive comparable credit for any week during which he makes a maximum compensation payment because of the same injury under the specific loss schedule. In similar fashion, La.R.S. 23:1206 provides that any voluntary payment made by the employer which was not due and payable when made may be deducted from the payments to be made as compensation by shortening the period during which compensation shall be paid, and not by reducing the amount of the periodical payments. Analogously, if the employer in the present case should be required to pay partial disability compensation to the employee in the future because the worker has become unemployed or underemployed due to his injury, the employer should receive credit for his earlier payment due to that injury under the specific loss provision by shortening the period during which partial disability compensation is payable. The employer may not make deductions from any future disability compensation payments on a dollar for dollar basis, because such deductions are provided for only where the employer has first paid compensation under the total or partial disability provisions and compensation is later allowed under the specific loss subdivision. La.R.S. 23:1223.
The lower courts correctly refused to impose penalties and attorney fees in this case. Although the insurance company failed to pay compensation for several months after it received satisfactory proof of loss from the insured, there is no proof that the insurer failed to "make such payment within sixty days after receipt of such proofs and demand therefor. ..." [emphasis added] La.R.S. 22:658. In order to subject an insurer to penalties and attorney's fees, a worker's compensation plaintiff must prove that the company arbitrarily, capriciously or without probable cause failed to make timely payment after receipt of both a demand therefor and satisfactory proof of loss. Moore v. St. Paul Fire & Marine Ins. Co., 251 La. 201, 203 So.2d 548 (1967). The plaintiff in the present case offered evidence by stipulation that a demand letter was mailed to the insurer, but we have been unable to find any evidence in the record that such a demand was actually received more than sixty days prior to the commencement of compensation payments. Accordingly, we are constrained to find that the plaintiff has failed to carry his burden of proof on this issue.

Decree
The judgments of the trial and appeals courts are amended to award the plaintiff, Leonard B. Jacks, 100 weeks of compensation according to the schedule for the specific loss of his eye and 350 weeks of partial disability compensation, subject to a credit for the portion of the compensation which *530 has been paid. As amended, the judgments are affirmed.
AFFIRMED AS AMENDED.
MARCUS, J., dissents in part and concurs in part and assigns reasons.
MARCUS, Justice (dissenting in part and concurring in part).
The majority correctly concludes that an employee cannot recover under both the partial disability and scheduled loss subdivisions. I do not agree, however, that there should be a week-for-week credit for benefits paid under the scheduled loss subdivision.
The workmen's compensation act does not specifically address the issue of the type of credit that an employer or insurer who pays scheduled loss benefits is entitled to.[1] However, it does provide for the reverse situation. That is, when compensation has been paid under the disability subdivisions and the employee is only entitled to scheduled loss benefits, the act directs that the amount of prior payments be deducted from the amount due. La.R.S. 23:1223. In my view, it is logical to apply the same dollar-for-dollar credit to the situation where the employee has been paid scheduled loss benefits and is later determined to be entitled to disability.
Moreover, a dollar-for-dollar credit is consistent with the scheme of recovery under the compensation act; that is, to permit recovery for a covered injury either under the disability subdivisions or the scheduled loss subdivision, but not both. If future payments for partial disability are at the maximum rate ($141.00), then whether the credit is on a week-for-week or dollar-for-dollar basis would be of no moment since the payments previously paid for the scheduled loss were at the same rate ($141.00). However, if the future payments for partial disability are less than the maximum rate, then a credit on a week-for-week basis would have the effect of permitting recovery under both the disability and scheduled loss subdivisions.
Additionally, I disagree with the award of scheduled loss benefits with a reservation of rights to the employee to recover under the partial disability subdivision in the event it proves to be more favorable. I consider that the majority misapplied the rule of statutory construction relied on to reach this result. Under the compensation act, when an employee suffers an injury that is described in the scheduled loss subdivision, he is not limited to those benefits if the injury produces some incapacity to work. In such a situation, he is entitled to disability benefits. The majority now extends this rule further by holding that the employee is entitled to be awarded both until it can be determined which is, ultimately, in his favor. I consider that this decision should be made at the time of trial.
I agree with the majority that plaintiff is not entitled to penalties and attorney fees under La.R.S. 22:658.
Accordingly, I respectfully dissent in part and concur in part.
NOTES
[1] Temporary total disability benefits were not paid for the first week of work missed by plaintiff in accordance with La.R.S. 23:1224.
[2] Defendants were ordered to pay weekly compensation benefits during the period of partial disability beginning as of February 5, 1979, but not to exceed 450 weeks, at the rate of 66 2/3% of the difference between the wages the plaintiff was earning at the time of the injury ($480.40) and any lesser wages which the plaintiff actually earned in any week after February 5, 1979, or may earn in the future in any gainful occupation for wages, not to exceed the maximum compensation rate of $141.00 per week, and not to be less than the minimum compensation rate of $42.00 per week.

It was further ordered that defendants be given credit for the total compensation previously paid from February 5, 1979 through and including June 19, 1980, at the rate of $141.00 per week, said credit to be applied against all past and future benefits owed for partial disability.
[3] See, Hall v. Pipeline Service Corp., 233 La. 821, 98 So.2d 202 (1957); Washington v. Independent Ice & Cold Storage Co., 211 La. 690, 30 So.2d 758 (1947); Robichaux v. Realty Operators, 195 La. 70, 196 So. 23 (1940); McGruder v. Service Drayage, 183 La. 75, 162 So. 806 (1935); Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185 (1936); Ben v. Starns-McConnell Lumber Co., 243 So.2d 77 (La.App. 1st Cir. 1970); Miller v. General Chemical Division, 128 So.2d 39 (La.App. 1st Cir. 1961); Tyler v. Great American Indem. Co., 116 So.2d 717 (La.App. 2d Cir. 1959); Jackson v. Steel Fabricators, Inc., 90 So.2d 397 (La.App. Orleans 1956); O'Connor v. American Mutual Liability Ins. Co., 87 So.2d 16 (La.App. Orleans 1956); Cooper v. Employers Liability Assurance Corp., 80 So.2d 180 (La.App. Orleans 1955); Storm v. Johnson, 23 So.2d 639 (La.App. Orleans 1945).
[4] In light of our examination of other compensation statutes containing schedule of specific loss provisions, as well as the scholarly commentary cited, we acknowledge as erroneous the dicta in Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185 (1936), to the effect that the schedule serves generally as a substitute for the employee's surrendered tort claim.

The disfigurement subsection, La.R.S. 23:1221(4)(p), however, is difficult to square with the compensation principle, since it is not based on loss of earning capacity. See Malone & Johnson, supra, § 286 p. 664.
[5] Distinguished commentators have suggested that an employee in this situation is entitled to the specific loss award as a minimum recovery. Malone & Johnson, supra, § 282 p. 651; Comment, supra, at 94.
[1] The majority analogizes to two provisions of the compensation act in reaching the conclusion that a week-for-week credit should apply. In my view, neither is applicable. La.R.S. 23:1221(3), dealing with payment for partial disability, sets out the method for determining the number of weeks of benefits an employee has left. It is merely an explanation that the benefits are not calculated on a calendar basis, but rather that benefits have to be paid to obtain a credit. Nor does La.R.S. 23:1206 apply. That statute refers only to voluntary payments which, by the terms of this act, were not due and payable when made. It is inconsistent to say that an employee who loses an eye is entitled to either scheduled loss benefits or to disability, but payment under one before judgment is a voluntary payment that was not due.