434 So.2d 1282 (1983)
Donald BERNARD, Plaintiff-Appellee,
v.
MERIT DRILLING COMPANY and Aetna Life and Casualty Company, Defendants-Appellants.
No. 83-89.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
*1284 Franklin, Moore & Walsh, R. Michael Caldwell, Baton Rouge, for defendants-appellants.
James T. Lee, Marksville, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and YELVERTON, JJ.
GUIDRY, Judge.
In this workmen's compensation suit, the plaintiff, Donald Bernard, seeks benefits for total and permanent disability and penalties and attorney's fees. Made defendants are the plaintiff's former employer, Merit Drilling Company, and its workmen's compensation insurer, Aetna Life and Casualty Company. Following trial of the matter, the trial court rendered judgment in favor of the plaintiff awarding him: (1) the applicable maximum disability rate of $148.00 per week for the period beginning with the date of the plaintiff's work accident, October 26, 1979, until February 7, 1980; (2) benefits for partial disability at the rate of $89.79 per week from February 7, 1980, for a period of 450 weeks; (3) medical, travel, and incidental expenses; (4) a 12% penalty on all past due benefits; and, (5) an attorney's fee of $3,500.00.
The defendants appeal, asserting that the trial court erred: (1) in denying defendants' motion for a continuance; (2) in incorrectly determining the extent and duration of disability benefits; (3) in finding that the defendants were arbitrary and capricious in withholding benefits; and, (4) in awarding an excessive attorney's fee. The plaintiff answered the appeal, seeking benefits for total and permanent disability, or in the alternative, an increase in the amount of partial disability benefits. The plaintiff also seeks an increase in the amount of attorney's fees awarded.
The assignments of error made by the parties raise the following issues: (1) whether the trial court erred in denying defendants' motion for a continuance; (2) whether the trial court erred in determining the nature and extent of the plaintiff's disability; (3) the correctness of the method used in determining the amount of partial disability benefits owed; (4) whether the defendants were arbitrary and capricious in withholding benefits; and, (5) whether the court abused its discretion in awarding penalties and attorney's fees.

FACTS
It is undisputed that on October 26, 1979, the plaintiff sustained an accidental injury to his left wrist in the course and scope of his employment with the defendant, Merit Drilling Company. The parties stipulated that the plaintiff's average weekly wage at the time of the accident was $449.00, and that the maximum rate of workmen's compensation benefits payable to the plaintiff is $148.00 per week. Merit's workmen's *1285 compensation insurer, Aetna Life and Casualty Company, paid the plaintiff disability benefits at the maximum rate from the date of the injury until February 7, 1980, at which time benefits were terminated. No further payments were made to the plaintiff until March 16, 1981, when compensation benefits were reinstated at the statutory minimum of $44.00 per week. Payments continued at this rate until shortly before trial of this matter, when it was learned that the plaintiff was temporarily totally disabled due to the formation of a ganglion cyst on his left wrist. At that time, benefits at the maximum rate were reinstated pending the surgical removal of the cyst.

MOTION FOR CONTINUANCE
The defendants contend that the trial court erred in denying their motion for a continuance. The motion was based on the fact that two of their witnesses were unavailable at the time of trial. The witnesses were employees of Quality Explorations, Inc., who supervised the plaintiff during the plaintiff's employment with that company. According to the record, plaintiff was employed by Quality Explorations during the period from August of 1981 to September of 1982. The defendants claim that, had these witnesses been available at trial, they would have testified that the plaintiff performed heavy labor while working for Quality Explorations, and that the plaintiff did not complain excessively of pain in his wrist.
LSA-C.C.P. Art. 1602 provides:
A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.
Our careful review of the record reveals no reversible error in the trial court's refusal to grant the defendants' motion. Presumably, the testimony of these witnesses would have been used to rebut the plaintiff's contention that he worked in substantial pain when employed by Quality Exploration and is therefore totally disabled. The trial court, without the benefit of this testimony, resolved this contention favorable to the defendants. Therefore, even if the trial court erred in denying the requested continuance, defendants were not prejudiced as a result of this ruling.

NATURE AND EXTENT OF DISABILITY
The trial court found that the plaintiff was temporarily totally disabled from the date of the accident until February 7, 1980, and awarded benefits for total disability for that period of time. The court further found that from February 7, 1980, the plaintiff remains 30% partially disabled, and awarded benefits for 450 weeks pursuant to LSA-R.S. 23:1221(3).
The plaintiff contends that the trial court erred in failing to find him totally and permanently disabled, or in the alternative, that the period of temporary total disability extended beyond February 7, 1980. In the further alternative, plaintiff asks for affirmation of the trial court judgment insofar as it finds him permanently partially disabled. The defendants assert that, at best, plaintiff is entitled to recovery of compensation for a specific loss under R.S. 23:1221(4) and that the disability to his wrist is only 5% to 15%.
A worker who is unable to return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La. 1981); Dusang v. Henry Beck Builders, Inc., 389 So.2d 367 (La. 1980). According to the odd-lot doctrine, an employee is entitled to compensation for total disability when he is rendered unable to perform any job or service for which a reasonable market exists. The term "any gainful employment", as used in the workmen's compensation statute, is interpreted to mean any gainful occupation which, as a practical matter, affords the claimant an opportunity for employment. Wilson v. Ebasco Services, Inc., supra.
*1286 A worker is partially disabled under LSA-R.S. 23:1221(3) when he cannot perform the duties required by his former employment but can still do other work. Scott v. Sears, Roebuck & Company, 406 So.2d 701 (La.App. 3rd Cir.1981). Partial disability also includes the situation where a workman would experience substantial pain when working in his former occupation, but where he could perform other work without experiencing such pain. McBroom v. Argonaut Insurance Company, 370 So.2d 212 (La. App. 3rd Cir.1979), writ denied, 371 So.2d 1342 (La.1979). Where a worker sustains a specific loss, if such loss likewise renders him permanently partially disabled, he is entitled to the more favorable of the two remedies. Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982); Stracener v. United States Fidelity & Guaranty Co., 420 So.2d 1101 (La.1982). The determination of disability and the existence of substantial pain are questions of fact which may not be disturbed on appeal unless clearly wrong. Newell v. U.S. Fidelity and Guaranty Co., 368 So.2d 1158 (La.App. 3rd Cir.1979).
The trial court concluded that the plaintiff was temporarily totally disabled from the date of the accident until February 7, 1980, and that he was thereafter permanently partially disabled. For the reasons which follow, we find that the period of temporary total disability extended beyond February 7, 1980 and the trial court clearly erred in finding otherwise.
Following the injury to his wrist, the plaintiff was in the care of Dr. Kenneth C. Cranor, an orthopaedic surgeon. Dr. Cranor saw the plaintiff several times in the year following the injury. In a report dated January 31, 1980, Dr. Cranor stated that the plaintiff should engage in range of motion and muscle strengthening exercises, and that he would see the plaintiff again in one month. He stated that the plaintiff "may be a candidate to return to unrestricted activity in that time." (emphasis supplied).
The plaintiff attempted to return to work with Merit on February 7, 1980, at which time he was assigned to roustabout duties. After three days, the plaintiff left the job due to the pain in his wrist. He saw Dr. Cranor on February 25, 1980. Dr. Cranor's report of that date states in part:
"This young man is in the rehabilitative phase of his recovery at the present time and I believe that he needs activity whether it be pure exercises or on the job activity but they must be tailored for him to a reasonable extent or it might precipitate significant discomfort that he will not tolerate as seems to have been the case in the past week or so. This tolerance to activity should increase but will be slow in doing so and regardless as to whether he is using his wrist at work or doing exercises at home, I stressed the need for him to constantly engage it up to his physical tolerance.

The permanent anatomical physical impairment that this young man will have cannot be estimated on the basis of his range of motion alone in my opinion because of the intra-articular nature of the fracture, the residual irregularities of which can give him weakness on attempted strong grip as well as a progressive post-traumatic arthritis that could ultimately lead to the need for a surgical arthrodesis of the joint. He has not at the present time improved to the point that makes his present situation tolerable but I expect him to do so during the next three months provided his attitude does not remain too negative." (emphasis supplied)
This medical report, coupled with the plaintiff's unsuccessful attempt to return to work, convinces us that the plaintiff's temporary total disability extended beyond February 7, 1980. The only other evidence in the record concerning the plaintiff's condition during this period of time is the testimony of the plaintiff himself, who testified that he was unable to work due to the pain in his wrist. We conclude that as of February 25, 1980, the plaintiff, whose work experience is in construction work, heavy equipment operation, and oil field labor, was unable to return to gainful employment without suffering substantial *1287 pain, and was therefore temporarily totally disabled.
A more difficult question is determining the duration of the plaintiff's temporary total disability. Dr. Cranor continued to see the plaintiff subsequent to the examination of February 25, 1980. On March 28, 1980, the plaintiff returned to Dr. Cranor's office complaining of pain and swelling in his wrist precipitated by use of a can of spray paint for a short period of time. A local anesthetic was injected into the tendon sheath to aid in diagnosing the condition of the wrist, and another appointment was scheduled to assess the effect of the anesthetic. The next report of Dr. Cranor in the record is dated September 3, 1980. This report was issued in response to a request by Aetna for an estimate of the plaintiff's permanent disability. Dr. Cranor stated that the plaintiff had a 5% permanent anatomical impairment of the upper extremity. He also stated that there was a definite possibility of post traumatic degenerative arthritis that could necessitate a wrist fusion which would result in a 30% impairment of the upper extremity. There is evidence in the record that the plaintiff saw Dr. Cranor again in October of 1980, but a copy of that report does not appear in the record.
The medical reports issued by Dr. Cranor subsequent to February 25, 1980 are inconclusive with regard to a determination of the duration of the plaintiff's temporary total disability. The reports do not address themselves to the question of whether the plaintiff was then disabled from gainful employment practically available to him. The record does show, however, that the plaintiff began working for Luhr Brothers Construction Company in December of 1980 as a truck driver and heavy equipment operator. He kept this job for six months. In the summer of 1981, he worked for two weeks as a backhoe operator for Lacoste Construction Company. Following his employment with Lacoste, the plaintiff went to work for Quality Explorations, Inc. as a drill helper. He maintained this job for a period of thirteen months.
While the plaintiff contends that he was forced to work in great pain, the record shows that the plaintiff was fairly consistently employed beginning in December of 1980. The plaintiff saw Dr. C.W. Lowrey on March 31, 1981. At that time, the plaintiff was working as a truck driver for Luhr Brothers. Dr. Lowrey testified that at the time he saw the plaintiff, his employment as a truck driver could cause the plaintiff "occasional discomfort", but not pain sufficient to force the plaintiff to discontinue such employment. Dr. Lowrey's assessment of the plaintiff's condition as of March 31, 1981, indicates that the pain experienced by the plaintiff in his employment as a truck driver falls short of the "substantial pain" necessary to render the plaintiff totally disabled.
Our consideration of the medical evidence in the record and the plaintiff's work history leads us to conclude that the plaintiff's temporary total disability lasted until December of 1980, when he began a period of consistent employment. Although the plaintiff asserts that he was working in great pain, the record is devoid of any other evidence that the plaintiff had any particular difficulty in performing his job duties. The record does not reflect the exact date on which the plaintiff began working in December of 1980. The plaintiff bears the burden of proving the extent and duration of his disability. Since the record does not reflect the exact date in December of 1980 when plaintiff's temporary total disability ceased, we will fix this date as December 1, 1980.
We next consider the correctness of the trial court's determination that the plaintiff is partially disabled. The trial court considered medical reports and/or testimony of three doctors. As previously stated, Dr. Cranor estimated that the plaintiff has a 5% permanent anatomical physical impairment of the upper extremity, with the possibility of a wrist fusion in the future which would result in a 30% impairment of the upper extremity. Dr. Lowrey assigned the plaintiff a 15% to 20% impairment of the hand. Dr. Terry Cromwell testified that the plaintiff has a 14% impairment of the left hand, but further stated *1288 that the plaintiff is 100% disabled from employment requiring a strong sustained hand grip.
The medical evidence and plaintiff's work history following his injury convinces us that while the plaintiff is capable of maintaining gainful employment, he is unable to perform heavy manual labor on oil drilling rigs, the work in which he was engaged at the time of the accident. We find no clear error in the trial court's conclusion that the plaintiff is permanently partially disabled.

AMOUNT OF PARTIAL DISABILITY BENEFITS
The trial court determined that the plaintiff is 30% partially disabled and determined the amount of benefits by multiplying the wages earned by the plaintiff at the time of the injury ($449.00 per week) times the percentage of disability (.30) times sixty-six and two-thirds percent (.6666). The court thus arrived at a figure of $89.79, which amount he awarded as weekly benefits for a period of 450 weeks pursuant to LSA-R.S. 23:1221(3).
This method of determining the amount of partial disability benefits is erroneous. The percentage of impairment is not taken into account in arriving at the amount of benefits owed on account of partial disability. LSA-R.S. 23:1221(3)[1] provides that a partially disabled claimant shall be paid sixty-six and two-thirds percentum of the difference between the wages the employee was earning at the time of the injury and any lesser wages the employee actually earns in any week. Thus, the crucial determination is not the percentage of disability assigned, but rather the actual wages earned by the claimant both before and following his injury.
The record shows that, from sometime in December of 1980 to September of 1982, the plaintiff was employed by at least three employers. In order to determine the amount of partial disability benefits owed the plaintiff, it is necessary to determine the duration of such employment and the amount of weekly wages earned by the plaintiff. The amount of benefits owed for any given week depends on the amount of wages earned in that particular week.
At the time of trial, the plaintiff was unable to work due to the formation of a ganglion cyst on his wrist. Dr. Cromwell was treating the plaintiff for the cyst at the time of trial. He testified that the cyst, while not painful, results in a considerable loss of strength, and is disabling. He stated that surgery was necessary to remove the cyst, after which the plaintiff's wrist should *1289 return to pre-cyst status in approximately six weeks. The defendants concede that the plaintiff was temporarily totally disabled due to the presence of the cyst, and they were paying benefits based on such disability at the time of trial. Thus, the plaintiff's entitlement to benefits for temporary total disability pending the surgical removal of the cyst, and during the recuperative period, is not made an issue herein.
According to the recent decision of our Supreme Court in Orgeron v. Tri-State Road Boring, Inc., et al., 434 So.2d 65 (La. 1983), a worker judicially determined to be partially disabled by reason of an accident occurring after September 1, 1977 is entitled to weekly compensation benefits not to exceed 450 weeks reckoning from the date of the accident, with a credit to the insurer for benefits previously paid and for those weeks in which actual wages are earned by the plaintiff. In Orgeron, supra, our Supreme Court stated:
"Since Orgeron was injured on December 19, 1978, he is entitled to weekly compensation benefits not to exceed 450 weeks from that date, with a credit to USF & G for benefits previously paid and for those weeks in which actual wages are earned by the plaintiff. Should Orgeron become employed subsequent to rendition of this judgment, he will be entitled to compensation at the rate of 66 2/3% of the difference between his weekly wages earned at the time of the injury and his weekly wages actually earned thereafter. If there occur any weeks in which Orgeron's weekly wage exceeds his weekly wage at the time of the accident, then Orgeron is entitled to no compensation during that period. LSA-R.S. 23:1221(3); Martin v. H.B. Zachry Co., supra [424 So.2d 1002]; LeBlanc v. Commercial Union Assur. Co., 349 So.2d 1283 (La.App. 1st Cir.), writs denied, 351 So.2d 174 (La.1977). The maximum weekly compensation to be paid by USF & G is 66 2/3% of the `average weekly wage paid in all employment subject to the Louisiana Employment Security Law,' with the minimum not less than 20% of such wage, computed to the nearest dollar. The `average weekly wage' is determined by the administrator of the division of employment security on or before August 1 of each year, and the average weekly wage in effect at the time of the injury on December 19, 1978 is the figure applicable during the full 450 week period during which compensation is payable. LSA-R.S. 23:1202. Orgeron's weekly benefits are to be calculated by USF & G according to this formula. Legal interest shall accrue on all past due payments from date due until paid."
Accordingly, the judgment of the trial court will be amended to award the plaintiff benefits in accord with the principles enunciated in Orgeron, supra. See also Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982); and, Stracener v. United States Fidelity and Guaranty Co., 420 So.2d 1101 (La.1982).

PENALTIES AND ATTORNEY'S FEES
The trial court found that the defendant, Aetna, was arbitrary and capricious in withholding benefits from the plaintiff, and awarded a penalty of 12% on all past due benefits plus an attorney's fee of $3,500.00. Aetna asserts that the trial court erred in finding it arbitrary and capricious in withholding benefits, and further, that the trial court erred in awarding an excessive attorney's fee.
The defendants paid benefits for temporary total disability from the date of the accident until February 7, 1980. At that time, all benefits were suspended until March 16, 1981, at which time benefits were reinstated but at the statutory minimum of $44.00 per week. These payments were continued until shortly before the trial, when benefits for temporary total disability were reinstated pending the surgical removal of the ganglion cyst which formed on the plaintiff's wrist.
When a compensation insurer is arbitrary and capricious in terminating benefits, it is liable for statutory penalties and attorney's fees. LSA-R.S. 22:658. Injured employees may not be cut off of compensation benefits on the basis of inconclusive medical reports. It is incumbent upon insurers to make reasonable efforts to ascertain the claimant's exact medical condition *1290 at the time benefits are terminated. Salvador v. Slidell Industries, Inc., 415 So.2d 511 (La.App. 1st Cir.1982); Wiley v. Southern Casualty Insurance Company, 380 So.2d 214 (La.App. 3rd Cir.1980).
Aetna relies on Dr. Cranor's report of January 31, 1980. This report stated that the plaintiff "may be a candidate to return to unrestricted activity" in one month's time. This report is, at best, inconclusive with regard to the plaintiff's condition, and particularly with regard to his ability to return to oil field labor. Aetna further relies on the fact that the plaintiff returned to work for Merit on February 7, 1980. However, no inquiry was made into the nature of the plaintiff's work or whether he was in fact able to maintain such employment without substantial pain. Such an inquiry would have revealed that the plaintiff was forced to leave the job after only three days due to the pain in his wrist. Furthermore, Dr. Cranor's report of February 25, 1980 confirmed that the plaintiff was still in the rehabilitative phase of recovery and unable to return to work.
In light of these circumstances, we find no error in the conclusion of the trial court that Aetna was arbitrary and capricious in terminating the plaintiff's benefits. Aetna had no medical basis for terminating benefits on February 7, 1980, or for failing to reinstate such benefits following the February 25, 1980 report of Dr. Cranor.
The defendants further assert that the trial court awarded an excessive attorney's fee. In answer to the appeal, plaintiff seeks an increase in the amount of the attorney's fee awarded.
The trial court awarded an attorney's fee of $3,500.00. Aetna asserts that the amount of time and effort expended by plaintiff's counsel does not justify such an award. While these factors may be considered by the trial court, they do not limit the exercise of the judge's discretion. An award made as a result of arbitrary nonpayment of benefits is in the nature of a penalty, and the value of the attorney's services need not be proven. Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir.1979), writ denied, 379 So.2d 1102 (La. 1980). We find no abuse of discretion in the trial court's award of $3,500.00.
The plaintiff seeks an increase in the attorney's fee to cover his attorney's services on appeal. An increase in attorney's fees is usually denied when the party seeking the increase has asked for additional relief which the court denies. Skinner v. Baggett Transportation Company, 391 So.2d 555 (La.App. 4th Cir.1980); Conlay v. Houston General Insurance Co., 370 So.2d 196 (La.App. 3rd Cir.1979), writ granted on other grounds, 371 So.2d 618 (La.1979).
In the instant case, the plaintiff answered the appeal seeking benefits for total and permanent disability, which was denied. However, the plaintiff's alternative demands, for an extension of the period of temporary total disability and for a recalculation of partial disability benefits, were granted. Under these circumstances, we feel that an increase in the attorney's fee of $750.00 is warranted to cover the cost of the attorney's services on appeal.
For the reasons assigned, the judgment of the trial court awarding the plaintiff benefits for temporary total disability from the date of injury to February 7, 1980, is amended to award such benefits from the date of injury to December 1, 1980. The judgment of the trial court finding the plaintiff permanently partially disabled and as such entitled to the benefits as provided for by LSA-R.S. 23:1221(3) is affirmed, the plaintiff being entitled to weekly compensation benefits not to exceed 450 weeks reckoning from October 26, 1979 with a credit to the defendants, Merit Drilling Company and Aetna Life and Casualty Company, for benefits previously paid and for those weeks in which actual wages were or are earned by the plaintiff, all pursuant to the provisions of LSA-R.S. 23:1221(3). The judgment of the trial court is further amended to award plaintiff an additional attorney's fee of $750.00. As amended, the judgment is affirmed at the defendants' cost.
AFFIRMED AS AMENDED.
GUIDRY, J., files a concurring opinion assigning written reasons.
*1291 GUIDRY, Judge, concurring.
Although I authored the majority opinion, I feel compelled to express my disagreement with our disposition of one of the issues therein.
In the majority opinion, we hold that the plaintiff is entitled to benefits for permanent partial disability for a period not to exceed 450 weeks reckoning from the date of the accident, with a credit to the defendant insurer for benefits previously paid and for those weeks in which actual wages are earned by the plaintiff. Our holding is compelled by the Supreme Court cases of Jacks v. Bannister Pipelines America, 418 So.2d 524 (La.1982), Stracener v. United States Fidelity and Guaranty Company, 420 So.2d 1101 (La.1982), and Orgeron v. Tri-State Road Boring, Inc., et al., 434 So.2d 65 (La.1983).
I respectfully suggest that the language of LSA-R.S. 23:1221(3) mandates a contrary result. I feel that the statute entitles an employee to 450 weeks of permanent partial disability benefits, irrespective of any other benefits paid to him, under subsection (1).
LSA-R.S. 23:1221(3) provides that benefits for permanent partial disability resulting from an injury occurring on or after September 1, 1977 shall not be paid beyond a maximum of 450 weeks. The statute states in pertinent part:
"... provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee's actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this subdivision (3) be increased beyond the maximum number of weeks stated in this subdivision (3)." (Emphasis supplied).
I interpret this language to mean that the employer is entitled to reduce one week from the maximum number of weeks for which compensation is payable in any week that the employer pays any compensation on account of permanent partial disability (hence the phrase "under this subdivision (3)"). The logical converse of this is that for any week in which compensation is paid under another subdivision (such as temporary total disability under subdivision (1)), the employer is not entitled to reduce a week from the maximum number of weeks for which compensation is payable. Thus, the payment of temporary total disability benefits should not affect the plaintiff's right to 450 weeks of permanent partial disability benefits. Had the legislature intended to allow employers a credit of one week in weeks that benefits are paid under other subsections, it would have been unnecessary to include the phrase "under this subdivision (3)" in the statute.
For these reasons, I respectfully concur in the result reached in the majority opinion.
NOTES
[1] LSA-R.S. 23:1221(3) provides:

"(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on and after September 1, 1975, and on or before August 31, 1976; and not beyond a maximum of four hundred twenty-five weeks for such partial disability resulting from injury occurring on and after September 1, 1976, and on or before August 31, 1977, and not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee's actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this subdivision (3) be increased beyond the maximum number of weeks stated in this subdivision (3)."