SHORTESS, Judge.
On August 18, 1981, Brenda King (plaintiff) an employee of Payne & Keller Construction Company, had an accident while in the course and scope of her employment. She was moving an empty 55-gallon drum up an incline on a dolly when she felt what she described as a “pop” in her back. She felt no pain from the incident until later that day and she reported it to her employer. After receiving heat and ointment treatments from the company nurse, she continued trying to work but experienced further pain in addition to numbness in her hands.
On August 21, 1981, she saw a chiropractor, Dr. Philip Smith, who diagnosed her condition as a lumbar sprain. He also found pre-existing spondylolisthesis. He administered manipulation and heat treatment. Plaintiff continued to complain of pain while performing her job. On September 3, plaintiff was laid off by Payne & Keller.
On October 21, 1981, plaintiff went to work at H.B. Zachary Company. Her job involved more clerical than manual labor duties, and more sitting. However, she still experienced pain in her lower back and numbness in her hands and feet. She was released from the employ of H.B. Zachary on February 25, 1982. Plaintiff testified that she had not worked after that time.[1]
The plaintiff filed suit against American Motorist Insurance Company (defendant), Payne & Keller’s workers’ compensation insurer. The trial court found that plaintiff “at the time of her accident suffered from pre-existing spondylolisthesis” and that she was not “totally and permanently disabled as a result of the injuries received.” The court found that she suffered “at best” from “limited loss of use or function in her low back so as to entitle her to compensation as provided in R.S. 23:122[l](4)(p).” It awarded her 33V3% of wages for 100 weeks less the amount paid her during her period of temporary disability. The court further found that defendant was not arbitrary and capricious under La.R.S. 23:1201.2 in discontinuing payment of benefits on September 28, 1981. Plaintiff appeals this judgment, alleging that the trial court erred in awarding benefits for loss of “use or function” (under La.R.S. 23:1221(4)(p)) rather than for permanent partial disability under La.R.S. 23:1221(3), and in failing to find defendant arbitrary and capricious.
Dr. Philip L. Smith, the treating chiropractor, testified that he first saw plaintiff on August 21, 1981. The history she gave him was that she was injured on August 18 while pulling a dolly loaded with 50-gallon drums up a hill. She said that she heard something in her back pop and the next morning experienced stiffness in her neck and her back and tingling in her hands and feet.
Smith’s examination revealed definite tenderness and muscle spasms in her lower back. His x-rays revealed spondylolisthe-sis at the L-5 level and defects in the pars inter articularis, also at L-5. His diagnois was a lumbar sprain with vertebrogenic neuropathy. He treated her with spinal *6 manipulation, intersegmental traction and sine wave therapy.
Plaintiff told Smith that she needed a work release with no restrictions so that she would have no trouble finding a job in order to support her out-of-work husband and her daughter. Smith said he gave her a no-restriction release on August 28 “because she was fearful that if I placed restrictions that she might not be able to go back to work, and so I told her I would do that for her.” However, he also testified that he did remember telling her at that time that she should not try and do heavy work if she could avoid it. A later “release” was written and sent only to plaintiffs attorney on October 20, 1981, stating that plaintiff was released as of that date “with a restriction of no heavy lifting.” Smith stated at trial that plaintiff “wasn’t suited to heavy physical labor.”
Plaintiff was also examined by Dr. Willard Dowell, an orthopedic surgeon, on May 6, 1982. She gave him substantially the same history she gave Smith. Upon examination, Dowell also noted localized tenderness over her lower dorsal spine; his x-rays also revealed the spondylolisthesis at L-5/S-l, and defects in her pars inter articu-laris bilaterally. His diagnosis was a “sprain of her lower back.” When asked whether he thought the incident at Payne & Keller could have caused this sprain, he stated that plaintiff could have suffered an accident which “awakened” the spondylolis-thesis since she had had no pain before the accident but experienced pain after the accident. Both doctors were firm in their belief that their objective tests did not allow for the possibility of plaintiff’s feigning pain or muscle spasm. Dr. Dowell stated, “I don’t think she should go back to doing this type of work ... I can’t say that she can’t go back to it, but I wouldn’t recommend it.” Both doctors agreed that in the future she should lift no more than 25 pounds at a time.
After examining this evidence, we agree with the trial court that (1) plaintiff sustained an injury to her lower back in an accident which occurred in the course and scope of her employment with Payne & Keller, and (2) both the treating chiropractor and the orthopedic surgeon who examined her concluded that the accident was either a strain or sprain of her lower back, which condition aggravated her pre-exist-ing spondylolisthesis.
Plaintiff testified that her job at Payne & Keller included sweeping the floors and occasionally moving the 55-gallon drums which were used as trash cans on the job site. She testified that she did not move these except with a dolly and that this was not her regular duty. She was also called upon occasionally to lift water barrels, but always with other employees and never when they were full. Donald Gilliam, safety engineer at Payne & Keller, testified that plaintiff’s duties included “excavation work” which he described as “shoveling, picking up the trash, discarding lumber.” He further testified that her duties also included sweeping and changing water barrels.
Plaintiff testified that she “was always hurting” in her job at H.B. Zachary, which lasted approximately four months, from late October, 1981, through late February, 1982. She said that she was “just more or less an errand person,” running errands, picking up time books and making copies of blueprints. She said she had a place to sit down to perform these duties but that her back always bothered her and that her feet and hands would go to sleep. This testimony was corroborated by Dr. Smith, who stated that in his opinion she could not sit and perform work for eight hours at a time.
The trial court found that the chiropractor and the orthopedic surgeon were of the opinion that “her condition at the time of her employment was such that she was not suited for heavy manual labor.” The evidence shows that she was doing some heavy manual labor without any problem before this accident but has not done so since. Considering the description given by both plaintiff and Gilliam of her job duties, we conclude that plaintiff is presently unable to perform all the duties she *7 was called upon to perform before the August 18 accident. “A claimant who is able to engage in some employment, though not necessarily the type of employment he was engaged in at the time of the accident, is considered to be ... partially disabled.” Robichaux v. Terrebonne Parish School Board, 426 So.2d 241 (La.App. 1st Cir.1983).
We find, however, that we are unable from the record to determine the extent of plaintiff’s partial disability. At the same time we note that neither party here actually disputes the trial court’s finding of loss of usefulness,[2] which finding we therefore affirm. Finding ourselves with a plaintiff who suffers from both a partial disability of an unknown extent, and loss of usefulness of the function of her lower back, we turn to Jacks v. Banister Pipelines America[3] for direction. In Jacks the Supreme Court stated:
Although the employee may not recover compensation for both his specific loss and his permanent partial disability, he is entitled to the more favorable of the two remedies. In a case in which it cannot be predicted which remedy will be more favorable, the employee should be awarded compensation for his specific loss as a minimum with reservation of his right to recover under the partial disability provision in the event it proves to be the more favorable.
418 So.2d at 526.
We will therefore amend the judgment of the trial court to reserve to plaintiff her right to recover under the partial disability provisions as discussed in Jacks.
Plaintiff further assigns as error the trial court’s refusal to find defendant arbitrary and capricious in its payment of benefits. Plaintiff testified that she received payment in the amount of $652.00 in early September, covering the period from August 25 through September 28, 1981. We also note that Payne & Keller had in its file the no-restriction return to work slip that Dr. Smith had given plaintiff on September 28, 1981. This assignment of error has no merit. Cf. Robichaux, 426 So.2d at 245.
For the foregoing reasons, we affirm the trial court’s finding of loss of usefulness and the award made pursuant thereto; we affirm the trial court’s finding that defendant was not arbitrary and capricious; we reverse as to disability and find that plaintiff has proven some partial disability; and we amend the judgment of the trial court to reserve to plaintiff at her option a right to recover benefits for partial disability, should recovery thereunder become more favorable than that awarded by the trial court if and when it has determined the extent of her partial disability.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART AND REMANDED.

. She alluded to the availability of waitress work, but it is not clear from her testimony whether she was employed as a waitress after the H.B. Zachary job or not.

. The plaintiff/appellant argues against the loss of usefulness finding only as a part of its larger argument in brief that the proper finding of the trial court would have been permanent partial disability, and that the court may not award compensation under more than one of these findings. Defendant/appellee states in brief that "the Judgment of the Trial Court is correct and should be affirmed.”

. 418 So.2d 524 (La.1982).