LOBRANO, Judge.
On April 26, 1983 while employed as a carpenter for Brice Building Co. (Brice), Henry Lemoine (Lemoine) sustained a fracture of his left elbow. Brice paid Lemoine total temporary disability benefits in the amount of $204.00 per week from May 6, 1983 thru December 8, 1983, a total of 31 weeks. Shortly thereafter Lemoine instituted the present compensation suit alleging permanent partial disability.
At the trial of this matter the parties stipulated that Lemoine’s weekly wage at the time of injury was $574.00 per week, that he did in fact sustain an on the job accident, and that he had been paid compensation benefits totalling $6,324.00 as well as all medicals. The sole issue was the extent of Lemoine’s disability, and the extent of his compensation benefits.
The lower court awarded Lemoine scheduled benefits under La.R.S. 23:1221(4)(F) and (0) based on a finding of 15% disability to the upper left extremity. In accordance therewith judgment was rendered for compensation at the rate of $61.00 per week for a period of two hundred (200) weeks with credit given Brice for the thirty one (31) weeks already paid. In addition, the trial court reserved Lemoine’s right to recovery under La.R.S. 23:1221(3) partial disability should this occur in the future.
Both parties have appealed this judgment asserting the following errors:
(1) Lemoine asserts the trial court erred in finding that he was entitled to a *59 scheduled loss of disability for permanent impairment of the left upper extremity rather than finding he was entitled to permanent partial disability.
(2) Brice asserts that the trial court erred in finding a permanent impairment to the left upper extremity.
(3) Brice further complains that the trial court erred in awarding credit for 31 weeks of compensation paid rather than credit for the dollar amount paid.
After a review of the record and the trial court’s reasons for judgment we find no manifest error in the benefits awarded Lemoine. We do, however, agree with Brice that the credit given should have been for the dollar amount rather than the weeks.
The pertinent provisions of the compensation statute in effect and applicable to this case are as follows.[1]
La.R.S. 23:1221(4)(F) and (0) provided:
“In the following cases the compensation shall be as follows:
# * * # % #
(F) For the loss of an arm, sixty-five percentum of wages during two hundred weeks.
# # # ⅜ * #
(0) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.”
La.R.S. 23:1221(3) provided:
“For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training, and experience, sixty-six and two-thirds percentum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of the injury was particularly fitted by reason of education, training and experience, during the disability, ... not beyond a maximum of four hundred fifty weeks ...”
The claimant in a workmen's compensation proceeding bears the burden of proving to a legal certainty and by a preponderance of the evidence the nature and extent of his disability. Guillory v. U.S. Fidelity and Guaranty Co., 420 So.2d 119 (La.1982); Oster v. Wetzel Printing, 390 So.2d 1318 (La.1980); Dufrene v. St. Charles Parish Police Jury, 371 So.2d 378 (La.App. 4th Cir.1979). It is settled that an employee may not recover for partial disability and for a specific loss, but he may recover for one or the other, the employee being permitted to recover under whichever provision affords him greater compensation. Jacks v. Banister Pipeline of America, 418 So.2d 524 (La.1982). The fact that he may recover under one of two provisions, however, does not lessen his initial burden of proof. Therein lies the major issue of this case, did Lemoine carry his burden of proving permanent partial disability?
Dr. Robert Segura, an orthopaedic surgeon, testified he began treating Lemoine for a fractured elbow on April 27, 1983, the day following the accident. Dr. Segura’s immediate diagnosis was a closed intra-ar-ticular fracture involving the left lateral radial head, that is, the left elbow. Over the course of the next seven months of *60 treatment, Dr. Segura examined Lemoine twelve (12) times. According to Dr. Segu-ra, Lemoine gained improvements of range of motion of his elbow until there was no restriction. The fracture was stable with no abnormality and normal x-ray findings. Lemoine showed normal range of motion of the left shoulder. It was the opinion of Dr. Segura that there was no permanent disability suffered and that Lemoine was able to work at full duty. Lemoine did not return to work.
At the examination of November 18, 1983, Lemoine told Dr. Segura he did not feel capable of doing the same type of work he had done before and that he had applied for social security retirement benefits. In fact, Lemoine’s testimony shows he had applied for social security retirement benefits in May, 1983, shortly after the accident and had received his first check in June, 1983. Dr. Segura found nothing in the x-rays to substantiate Lem-oine’s complaints or to support a finding of any impairment which would prevent Lem-oine from returning to work. Dr. Segura found no consistent history to suggest chronic capsulites as opposed to general muscle soreness.
Dr. Daniel Seltzer, an orthopaedic surgeon first saw Lemoine on October 31, 1983, six (6) months after Lemoine sustained his injury. Dr. Seltzer found Lem-oine’s left elbow to have good range of motion without instability and the neuro-vascular examination intact. According to Dr. Seltzer, x-rays revealed virtually no displacement of the fracture. There were no degenerative changes in the elbow. The elbow was stable and the fracture reached its maximal healing point. Dr. Seltzer found a mild restriction of range of motion in the left shoulder from what he believed to be chronic capsulites. He testified that Lemoine suffered a ten (10) to fifteen (15) per cent disability of the upper left extremity and that Lemoine would have difficulty performing any type of overhead work but that he could perform work of a sedentary type. In addition, Dr. Seltzer testified that the chronic capsulites of the left shoulder, which became symptomatic, was more probable than not caused by the work related injury of April 26, 1983 given no prior history of degenerative changes in the area.
The record is clear that Lemoine did not return to work when advised to do so by Dr. Segura. In fact, he only worked for a day and one-half mainly sweeping and picking up trash. Shortly thereafter he retired under the federal social security system. He testified that at the time of trial he had a job with Avis rent-a-car to supplement his social security benefits. He did not produce any evidence that he attempted to seek work as a carpenter, nor did he produce anything to substantiate his earnings with Avis.
In the absence of any evidence of whether services that Lemoine could safely render in his condition were limited to quality and dependability so that there existed no stable market for his services and in the absence of more precise earnings records the trial court was correct in rendering judgment for the scheduled loss. The trial court was also correct in reserving unto Lemoine the right to prove a permanent partial disability at a later date as per the ruling of Jacks v. Banister Pipelines America, supra.
The trial court, in rendering judgment also gave credit to Brice for the number of weeks previously paid. Brice argues that this is incorrect in that they should have been given a credit for the dollar amount paid. We agree.
LSA R.S. 23:1223 provides:
“Where compensation has been paid under subsection (1), (2) or (3) of R.S. 23:1221, the amount of such payment shall be deducted from any compensation allowed under subdivision (4) thereof or under subpart C of this Part.” (emphasis added)
Brice paid Lemoine thirty-one (31) weeks of total temporary disability benefits at the rate of two hundred and four ($204.00) dollars per week pursuant to LSA R.S. 23:1221(1). The trial court rendered judgment allowing recovery of scheduled bene *61 fits under LSA R.S. 23:1221(4). Thus, under the literal language of LSA R.S. 23:1223 and the holding in Jacks v. Banister Pipeline America, supra, deductions from future disability compensation payments on a dollar for dollar basis are provided where the employer has first paid compensation under the total temporary disability benefits provision and compensation is later allowed under the specific loss provision.
For the above and foregoing reasons, we affirm the judgment of the lower court with respect to the award of a scheduled specific loss and reverse as to the credit given, Brice being entitled to a credit for the dollars it paid, as opposed the number of weeks.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
BARRY, J., dissents with reasons.

. These provisions were changed by Acts 1983, 1st Ex. Session No. 1, effective July 1, 1983.