KING, Judge.
The issue presented by this appeal is whether or not the trial court erred in refusing to modify a previous judgment awarding the plaintiff workmen’s compensation benefits for total and permanent disability.
On February 5,1982, International Paper Company (hereinafter defendant) filed a petition, pursuant to LSA-R.S. 23:1331,[1] seeking to modify a judgment signed on February 3, 1978, awarding Stephen Dement (hereinafter plaintiff) workmen’s compensation benefits for total and permanent disability. A hearing was held and the trial judge rendered written reasons denying *995 the request to modify the previous judgment. A written judgment was signed on July 12, 1984. Defendant devolutively appeals from that judgment and argues that (1) the trial court erred in ruling that plaintiff is still totally and permanently disabled and unable to perform any gainful occupation for wages; and (2) the trial court erred by using an incorrect standard in determining whether plaintiff is still totally and permanently disabled. We reverse.
FACTS
On June 2, 1976, and while attempting to change a tire on a pulpwood truck, plaintiff was injured when the tire blew up, causing the tire rim to strike his right leg. At the time of his injury, plaintiff was working in the course and scope of his employment as a log cutter with a subcontractor for defendant. On June 4, 1976, Dr. T.E. Banks performed a partial patellectomy on plaintiff’s knee, removing approximately one-half of the patella (kneecap). On May 6, 1977, plaintiff filed suit to collect workmen’s compensation benefits. After a trial, the trial court found that plaintiff was totally and permanently disabled, and that his disability was a direct result of his June 2,1976 accident and injury. Judgment was rendered on January 13, 1978 in favor of plaintiff and against Odell Roberts, Alan (a/k/a Allen) Coolman, and defendant, in solido, awarding plaintiff $66.60 per week for each weekly period from June 2, 1976 and for as long as plaintiff was disabled.[2] The trial judge also awarded plaintiff penalties, interest, attorney’s fees, medical and related expenses. The judgment was affirmed on appeal as to all defendants by this court in Dement v. International Paper Co., 363 So.2d 952 (La.App. 3rd Cir. 1978).[3]
After trial of plaintiff’s suit for workmen’s compensation benefits, he was admitted to St. Frances Cabrini Hospital on June 6, 1978 and Dr. Banks performed a full patellectomy on plaintiff’s injured knee, removing all remaining fragments of the patella. Plaintiff subsequently visited Dr. Banks several times in 1978. Dr. Banks stated in his deposition that, as of their August 30, 1978 visit, plaintiff “had no extensor lag, he had motion from zero to ninety-five degrees. His thigh musculature was better, and there was a difference of one and three-fourths inches in the size of his thighs six inches proximal to the knee joint. He at that time was advised to see about trying to return to work.”
According to Dr. Banks, plaintiff was examined again on October 3, 1978, at which time plaintiff was working driving a truck. This examination revealed a decrease in the difference in the size of plaintiff’s thighs, and an increase in the degree of plaintiff’s knee motion. On plaintiff’s November 14, 1978 visit Dr. Banks observed very slight swelling in the knee, and felt that plaintiff could continue to work.
Plaintiff did not visit Dr. Banks again until June 19, 1981, approximately two and one-half years later. One of defendant’s employees made the appointment for plaintiff to see Dr. Banks at that time. During this 1981 visit, Dr. Banks noted that plaintiff was having trouble with his knee on repeated squatting. Nevertheless, Dr. Banks felt that plaintiff was not totally disabled, but had a functional ten percent permanent partial disability of the right lower extremity, with which he was apparently working. Dr. Banks’ last examination of plaintiff was on June 25, 1982, approximately one year after plaintiff’s June 19, 1981 visit, and immediately prior to the trial court hearing on defendant’s requested modification of the February 3, 1978 judgment awarding plaintiff total and permanent workmen’s compensation benefits. *996 Dr. Banks was of the opinion that at that time plaintiff .. has an excellent result following a patellectomy. In the thirty-five years I’ve been in this business he’s only the second one that I’ve seen that’s got full range of motion.” Dr. Banks was of the opinion that pain would not be much of a factor in plaintiff’s condition but that loss of muscle strength, fatigue, and the loss of the kneecap making him more susceptible to injury from a direct blow to the joint would be the factors he would consider in estimating plaintiff’s disability as being a ten percent functional impairment of the right lower leg. Dr. Banks noted that plaintiff did not complain to him of pain on the last two occasions he had examined him.
Although plaintiff worked most of the time during the period subsequent to his 1978 knee operation, defendant has continued to pay plaintiff $66.60 per week for all weeks since plaintiff’s June 2, 1976 injury. As of June 26, 1982, plaintiff had been paid 317 weeks of compensation benefits.
The modification hearing was held on July 7, 1982. At the conclusion of the hearing, the case was left open for defendant to obtain copies of plaintiff’s federal tax returns and file them in the record after which briefs were to be filed. The income tax records of plaintiff were never obtained, and therefore, were not introduced into evidence. A brief was filed by defense counsel, but plaintiff’s counsel apparently did not file a brief. On June 27, 1984, the trial court rendered written reasons for judgment denying modification of the February 3, 1978 judgment. A written judgment was signed on July 12, 1984, denying defendant’s petition to modify plaintiff’s previous workmen’s compensation award. It is from this judgment that defendant appeals.
It is well settled that, in proceedings for modification of decrees awarding workmen’s compensation benefits to an employee, the employer bears the burden of proving, by a preponderance of the evidence, that the condition of the injured employee is favorably altered from what it was at the time of the original adjudication. Belsome v. Southern Stevedoring, Inc., 239 La. 413, 118 So.2d 458 (La.1960); Levickey v. Cargill, Inc., 405 So.2d 615 (La.App. 3rd Cir.1981). Defendant acknowledges its burden of proof but argues that it has met that burden and that the trial court used an incorrect standard in determining whether or not plaintiff is still totally and permanently disabled from his June 2, 1976 injury.
Before its 1983 amendment, LSA-R.S. 23:1221 defined permanent total disability and partial disability as follows:
„“(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two thirds per cen-tum of wages during the period of such disability.
(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on and after *997 September 1, 1975, and on or before August 31, 1976 ...”. (Emphasis added.)
In his written reasons for judgment, the trial judge denied the petition for modification because:
“The Court finds that because of the loss of his kneecap as a result of the injury of June 2, 1976, that the plaintiff is still permanently and totally disabled; that he cannot perform work of the same or similar character to that done at the time of his injury; and that he, therefore, is legally entitled to continue receiving Workmen’s Compensation benefits as provided by law at the time of his original injury.”
As this excerpt from the trial judge’s written ruling indicates, the trial judge only found that plaintiff was unable to perform work of the same or similar character to that done at the time of his injury. No other reasons for denying the request for modification were given. We agree with plaintiff that such a finding was not based on the proper standard to be used in determining whether or not plaintiff remains permanently and totally disabled but, instead was based on a standard which was only relevant in determining whether plaintiff remained partially disabled. See former LSA-R.S. 23:1221(3). The correct standard which should have been used by the trial judge to determine whether plaintiff remained permanently and totally disabled was whether or not plaintiff could engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which plaintiff was customarily engaged when injured. See former LSA-R.S. 23:1221(2).
The evidence clearly indicates that plaintiff has worked most of the time during the period subsequent to the second operation performed on his knee in June, 1978. Mrs. Genevive Lambert, wife of Don Lambert, testified that plaintiff worked for her husband from January 5, 1979 until October 17, 1980, for which plaintiff was paid $10,620.00 in 1979 and $10,663.00 in 1980. Mrs. Lambert also testified that when plaintiff quit working for her husband, plaintiff went to work for her brother-in-law, John Lambert. At that time, John Lambert was cutting wood for Murray Purvis, a contractor for defendant. Mr. Purvis testified that he observed plaintiff while plaintiff was working for John Lambert, and that plaintiff cut as much wood as two other cutters put together. Because plaintiff was such a good hand, and also because he knew how to drive a “skidder,” Mr. Purvis further testified: “So, I asked Lambert could I work for him and him get another man to take his place. So we done it that way. And Dement got on my payroll then. That was in February of ’81.”
In order to run the skidder, plaintiff had to climb up and down off the skidder and hook on his own chokers and unhook them. Mr. Purvis testified that plaintiff’s stamina on the job was equal to that of the other men working on the job, and that plaintiff “was a good hand.” Plaintiff drew his last check from Mr. Purvis on June 26, 1981, leaving his employment without explanation. While only working less than half a year for Mr. Purvis, plaintiff was paid a total of $6,090.00 for this period.
On January 6,182, plaintiff went to work for Gary Wayne Pinder, a contract cutter for R.D. Hayes. Plaintiff was still working for Mr. Pinder on the day of the hearing, July 7, 1982, earning $70.00 per day.
Additionally, plaintiff fished commercially in his spare time, selling his fish to a Mr. Bryant. Plaintiff testified that he had been running his nets even since the time that he began working for Mr. Purvis. Evidence was also introduced that the plaintiff was able to stand, stoop over, squat down, and kneel on his right knee and both knees in a fish market where he was working part time.
Not only does the evidence show that plaintiff worked a substantial part of the three-year period immediately preceding the date of the modification hearing, but the evidence also shows that plaintiff has, during this same time period, performed the same type of work that he was per *998 forming while originally working for defendant. We conclude that the trial judge’s finding that plaintiff “cannot perform work of the same or similar character to that done at the time of his injury” is manifestly in error and clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
WORKING IN SUBSTANTIAL PAIN
The trial judge did not indicate in his reasons for judgment that he refused to modify the previous judgment, awarding plaintiff workmen’s compensation benefits for total and permanent disability, because plaintiff was required to presently work in substantial pain. Plaintiff contends that this is the reason that the trial judge refused to modify the previous judgment although it was not stated in the trial court’s written reasons for judgment. Plaintiff claims that he has been working only because of economic necessity and claims that he has continuously worked in substantial pain.
The “odd lot” doctrine, insofar as its application to cases of working in “substantial pain,” was explained by the Louisiana Supreme Court in Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980), as follows:
“The ‘odd lot’ concept can also be applied to substantial pain cases, since a worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desireable employee. Thus, if a claimant’s pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he could be treated as an ‘odd lot’ worker and be awarded total disability status, unless there is proof that the jobs are realistically available to him.
On the other hand, if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity and physical capability to perform other jobs which are available, he should be considered partially disabled.” (Emphasis added.) Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367, at page 372 (La.1980).
In Oster v. Wetzel Printing, Inc., 390 So.2d 1318, at page 1322 (La.1980), the Louisiana Supreme Court stated that the “odd lot” doctrine is intended to lessen the impact of the harsh language of the 1975 amendment to LSA-R.S. 23:1221 which stated in effect that “[tjotal disability compensation can now be obtained only if the employee is unable ‘to engage in any gainful occupation for wages, whether or not the same or a similar occupation is that in which the employee was customarily engaged ...’ La.R.S. 23:1221(2) ...”. We find that the evidence in this matter, taken as a whole, clearly shows that plaintiff is now gainfully employed for wages doing the same type of work as that in which he was customarily engaged before the accident and that he is now able to perform this work without substantial pain. For this reason we do not find plaintiff is totally and permanently disabled from engaging in any gainful employment because of having to work in substantial pain and that plaintiff does not come within the “odd lot” doctrine of still being totally and permanently disabled because of having to work in substantial pain.
A worker could be partially disabled under former LSA-R.S. 23:1221(3) when he could not perform the duties required by his former employment but could still do other work. Knight v. Cotton Bros. Baking Co., Inc., 473 So.2d 105 (La.App. 3rd Cir.1985); Bernard v. Merit Drilling Co., 434 So.2d 1282 (La.App. 3rd Cir.1983). Partial disability can also include a situation where an employee would experience substantial pain while working in his former occupation, but where he could perform other work without experiencing substantial pain. Bernard v. Merit Drilling Company, supra. As we have found that plaintiff is not now working in substantial pain we do not find that he is now partially disabled.
*999 For these reasons we conclude that the trial court was clearly wrong in not modifying the judgment of February 3, 1978, awarding plaintiff workmen’s compensation benefits for total and permanent disability. Accordingly, the decision of the trial court is hereby reversed and set aside. Judgment is rendered relieving defendant of its obligation to pay plaintiff any further workmen’s compensation benefits under that judgment rendered herein on January 13, 1978 and signed on February 3, 1978.
All costs of this appeal are assessed against plaintiff-appellee.
REVERSED AND RENDERED.

. Before being amended in 1983, LSA-R.S. 23:1331 included the following language:
"At any time six months after the rendition of a judgment of compensation, a judge of the trial court that rendered the judgment shall review the same upon the application of either party for a modification thereof, on the grounds that the incapacity of the employee has been subsequently diminished or increased, or that the judgment was obtained through error, fraud, or misrepresentation. In such cases the provisions of R.S. 23:1121 through R.S. 23:1124 with reference to medical examinations shall apply.”

. Alan Coolman was plaintiffs immediate and supervising employer. At the time of the accident, Coolman and plaintiff were working for Odell Roberts, a contractor for defendant. Of these various parties, only defendant seeks modification of the judgment awarding plaintiff workmen’s compensation.

. On appeal the trial court judgment was reversed and set aside insofar as judgment was rendered in favor of Alan Coolman, Odell Roberts and defendant, and against California Union Insurance Company.