483 So.2d 1041 (1985)
Bertrand SAVOIE, Plaintiff-Appellant,
v.
FIRE PROTECTION DISTRICT # 1, ST. LANDRY PARISH OF the TOWN OF KROTZ SPRINGS; and Liberty Mutual Insurance Company, Defendants-Appellees.
No. 84-903.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
Rehearing Denied January 6, 1986.
Writ Denied March 14, 1986.
*1042 Thomas M. Yeager, Alexandria, for plaintiff-appellant.
Guglielmo, Lopez & Tuttle, Gina B. Tuttle, Opelousas, for defendants-appellees.
Before FORET, YELVERTON and KING, JJ.
YELVERTON, Judge.
Bertrand Savoie filed suit against Fire Protection District # 1 for the Town of Krotz Springs, Louisiana, and its insurer, Liberty Mutual Insurance Company, claiming entitlement to workmen's compensation *1043 benefits. From a judgment finding that the plaintiff had not sustained the burden of proving that his disability resulted from an on-the-job accident or an occupational disease, the plaintiff has appealed. We reverse and award benefits for permanent partial disability.
Savoie, 29, was employed as an operator/fireman with Fire Protection District # 1, for almost five years prior to his disability. His duties included operation of the firetruck and fighting fires. His work schedule required one 48-hour shift per week. On July 25, 1982, at 7:00 A.M., he reported to work even though he was ill with what he thought to be a cold. Later that evening at approximately 9:00 P.M. a house fire was reported, and Savoie drove the truck to the fire. His job at the fire was to monitor gauges on the truck. The fire was so "hot" that the heat eventually melted the dome of the firetruck, requiring plaintiff to back the truck farther away. After about 1½ hours at the fire plaintiff laid down and requested that he be taken to a hospital since he could "not go on anymore." He was taken to the hospital where he was eventually diagnosed as having pneumonia and a lung abscess. It took three months of hospitalization for him to recover.
His measured respiratory function was impaired from this illness and he is no longer able to perform his duties as an operator/fireman.
The defendants have paid no worker's compensation payments or medical expenses. On July 21, 1983, plaintiff filed suit to recover such benefits. After a trial on February 17, 1984, the trial court found plaintiff had failed to prove any causative connection between the illness and his job activities, and dismissed his demands.
No one questions that plaintiff now has a disability. The questions argued in the briefs before us on the appeal are: 1) did the plaintiff suffer an on-the-job accident or an occupational disease? 2) Did the trial court err in concluding plaintiff failed to prove that his disability was causally related to his employment? If plaintiff is found entitled to benefits, 3) what is the extent of the disability?
Answering the first question, we find that Savoie did in fact suffer an employment accident. The plaintiff testified that due to the heat from the fire he was helping to fight, he collapsed and became short of breath. The medical testimony agrees that his activities that night probably compromised his respiratory reserve causing him to collapse. This suffices as proof of an accident. See Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972).
In addition, the illness or disease from which plaintiff suffered (pneumonia and lung abscess) is classified as a disease or infirmity connected with the employment of a fireman, and the plaintiff may be entitled to worker's compensation benefits based on an occupational disease. La.R.S. 33:2581 and Saling v. City of New Orleans, 398 So.2d 1205 (La.App. 4th Cir. 1981), writ denied 401 So.2d 986 (La.1981).
The crucial issue in this case is whether the disability was causally related to plaintiff's work activities and/or the accident. Under La.R.S. 33:2581 any disease or infirmity of the lungs suffered by a fireman is presumed to have been caused by the nature of the work performed whenever it is manifested after five years of employment. The statute reads:
"Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused *1044 by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment."
The trial court found that this presumption was not applicable to the present case because Savoie only had four years and nine months of employment as a firefighter. We agree. The statutory presumption does not come into existence until after a full five years of employment as a firefighter. Therefore, we must look elsewhere to determine if the disability was shown to be related to work activities.
The recent case of Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324 (La.1985), explains the burden of establishing disability and its causal relation with the employment accident:
"As in other civil suits the employee in a worker compensation proceeding initially has the burden of establishing his disability and its causal relation with the employment accident by a preponderance of the evidence. In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. A claimant's disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such causal connection.
"Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Correlatively, when an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability.
"Once the disabled employee establishes the presumption of a causal relationship, the party denying the existence of the presumed fact assumes both the burden of producing evidence and the burden of persuasion on the issue. In other words, in order for the party denying the existence of the presumed causal relationship to prevail on the issue, he must produce evidence and persuade the trier of fact that it is more probable than not that the work-injury did not accelerate, aggravate or combine with the preexisting disease or infirmity to produce his disability." (Citations omitted.)
The above principles have been applied by this Court in determining causation in occupational disease cases. Hebert v. Lake Charles American Press, 427 So.2d 916 (La.App. 3rd Cir.1983). In Hebert, supra, the plaintiff developed a respiratory ailment following his prolonged exposure to toxic chemicals present in his occupational environment. The defendant employer sought to establish that plaintiff's occupational lung disease was due to a pre-existing asthmatic condition. This Court applied the above rationale and discounted the argument that the disease could have been brought on by other causes than those related to plaintiff's employment. This Court held that the crucial aspect of the case was that plaintiff was in essentially good health prior to prolonged exposure to toxic chemicals and that, thereafter, the symptoms of respiratory disease manifested themselves, thereby creating the presumption of causal connection.
*1045 In the present case the medical evidence consisting of two jointly submitted depositions is uncontradicted. Dr. Norwood Jones, a specialist in internal medicine with a subspecialty in pulmonary diseases, diagnosed plaintiff's condition as chronic obstructive lung disease resulting from widespread pneumonia. He testified that the pneumonia antedated the episode at work by several weeks. Although he opined that the episode at work probably did not aggravate plaintiff's condition he could not exclude such possibilities that it did aggravate or contribute to his condition. The doctor stated that plaintiff had a diminished respiratory reserve due to the abscess and pneumonia on that night and that plaintiff's activities probably compromised his respiratory reserve causing him to collapse. He felt that plaintiff at that moment first became aware that he was seriously ill. The doctor did not think that plaintiff could return to his former duties as a firefighter because firefighting involves a risk of acute injuries from inhaled smoke which could cause further lung impairment. He could not totally exclude the possibility that this type of pneumonia could be related to his former firefighting activities. The doctor stated that plaintiff had only a mildly impaired respiratory function and that he could do many jobs requiring light to moderate work.
Dr. David Posey, a general surgeon, was plaintiff's treating physician and testified as follows: The plaintiff gave the doctor a history of having fever and chills three weeks prior to the accident and having a productive cough one week prior to the accident. The abscess in the lung would have taken at least a week to develop prior to the accident, and was probably caused by the pneumonia since he ruled out bronchial obstruction as a cause. He was not able to determine the cause of the pneumonia. He did not feel that plaintiff's duties in fighting the fire and the exertion on the night of the accident made the abscess or pneumonia worse, considering that the plaintiff did not suffer from any smoke inhalation upon admission, although he could not rule out such a possibility. He also stated that based on the exposure that plaintiff's lungs have already had as a fireman it would be better for plaintiff to avoid any job which would result in further insult to his respiratory system.
The plaintiff testified that he was not overcome by smoke, but that he could not breathe due to the heat. He stated that he visited a hospital about a week prior to the fire for his cold, but that he had no problem breathing before the fire. He stated that he had fought numerous fires and had become shortwinded during these periods due to the smoke.
The plaintiff's mother testified that before the fire plaintiff told her he had had a cold for about two weeks and was taking antibiotics. Priscilla Tweedel, a volunteer fireman, testified that prior to the fire plaintiff had complained of feeling bad and of a cold, and while he was driving the truck to the fire plaintiff seemed in a daze. She also stated that a few days prior to the fire plaintiff was too ill to drive the rescue unit. James Soileau, the voluntary fire chief, testified that on the morning of the accident the plaintiff seemed fine. The interrogatories reveal plaintiff had fought 46 fires during his employment.
In the present case it is clear that plaintiff was suffering a disease or condition that preexisted the fire. The medical testimony was unequivocal that the pneumonia and lung abscess developed prior to the night of the fire. Therefore, in order to find plaintiff entitled to benefits, we must determine whether the employee's work accident aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability, and/or whether the disease or infirmity is causally related to plaintiff's work environment.
In Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982), (a case in which the author of this opinion was the trial judge), plaintiff seriously bruised his upper left arm in the spokes of a steering wheel of a truck when the vehicle dropped into a hole. After work, because of pain and swelling in the arm, he went to the *1046 hospital where the injury was initially diagnosed as a hematoma. Plaintiff returned to work but continued to suffer from pain and swelling; after approximately two months he was forced to discontinue his employment. Shortly thereafter plaintiff was diagnosed as having a malignant cancerous growth in his upper left arm, and he underwent surgery. Because of the tumor and the necessity for its removal the plaintiff became disabled.
Both lower courts determined that the cancer was not causally related to the employment accident and denied benefits. The Supreme Court, after finding that plaintiff did not suffer any apparent disabilities or abnormalities in his arm until he experienced the trauma, that the symptom of swelling continually manifested itself until the mass was removed, and that the evidence showed a reasonable possibility of causal connection (a possibility that the trauma caused the tumor to hemorrhage internally), applied the presumption that plaintiff's disability was causally related to the accident. Since the defendant failed to rebut the presumption, the Supreme Court reversed the judgments of the lower courts and awarded benefits.
In Walton v. Normandy Village Homes Association, Inc., supra, the plaintiff, who suffered from a preexisting diabetic kidney disease, fell from a height of 20 feet to a concrete surface. Before the accident he was not having any disabling symptoms and was able to perform fully the manual labor functions of his job. After the accident he was unable to do manual labor due to the progression or aggravation of his kidney dysfunction. The lower courts rejected the employee's compensation claim finding that the accident had not contributed in any way to his disability but that his diabetic kidney disease had progressed naturally and independently to cause disability which commenced coincidentally with the accident.
The Supreme Court found that Walton satisfactorily proved that before the accident he was fully performing all of the duties of his job without any disabling symptoms, that commencing with the accident he was disabled continuously to perform his physical labor duties and that there was both medical and circumstantial evidence indicating a reasonable possibility that his work injury aggravated, accelerated or combined with his preexisting diabetic kidney disease to produce his disability. Noting that three of the six doctors whose opinions figured in the case testified that the trauma could have had the effect of speeding up the progression of plaintiff's renal failure, the court concluded that
"... the previous courts either erred legally by failing to afford plaintiff the benefit of the presumption of causation or erred manifestly by determining that the defendants had proven it to be more probable than not that the work injury did not in any way accelerate, aggravate or combine with the preexisting disorder to produce the employee's disability."
After finding the defendants failed to rebut the presumption, the court reversed the prior judgments.
In determining whether the accident was causally related to plaintiff's disability we find the Hammond and Walton cases applicable. Prior to the accident plaintiff was able to perform the duties of his job. He had been on duty that day for 14 hours and had driven the truck to the fire. At the fire he checked the gauges of the truck and moved the truck to a different location when requested. The fire chief stated that the plaintiff appeared to be fine that morning. The plaintiff had symptoms, to be sure, of what he thought to be a cold, but these were obviously not disabling symptoms since he was doing his work, and in this respect he appeared to be in essentially good health.
Also, there is medical and circumstantial evidence which establishes a reasonable possibility of a connection between the accident and the disability. Dr. Jones could not exclude the possibilities that the accident did aggravate or contribute to his condition. The medical tesimony is also clear that plaintiff's activities that night probably compromised his respiratory reserve *1047 causing him to collapse. The plaintiff also testified that due to the heat he collapsed and became short of breath. For these reasons we feel the trial court erred by failing to afford plaintiff the benefit of the presumption of causation.
We find the rationale of these cases also applicable in finding that plaintiff's disability is causally related to his work environment. Before becoming a firefighter plaintiff was in good health and had not suffered any symptoms of pulmonary disease or infirmity. After four years and nine months of fighting fires with a history of inhaling smoke in the past and becoming shortwinded, plaintiff suffered from a respiratory disease (chronic obstructive lung disease resulting from widespread pneumonia). The medical evidence did not establish the cause of the pneumonia. The medical testimony did reveal that firefighting involves a risk of acute injuries from inhaled smoke which could cause lung impairment. Dr. Jones testified that the accident at work probably did not aggravate or contribute to his condition although he could not exclude such possibilities. The doctor stated that plaintiff's activities as a firefighter on that night probably compromised his respiratory reserve causing him to collapse. The doctor could not exclude as a possibility that the pneumonia could be related to his former fire fighting activities. Also, considering the fact that under La.R.S. 33:2581, quoted earlier in this opinion, plaintiff's disability would have been statutorily presumed to have been work related if the accident would have occurred just three months later, it seems to us that the fact of four years and nine months' service is an item of circumstantial evidence supporting a possibility of causal connection. In other words, if the legislature feels that after five years of employment a causal connection ought to be presumed, then it seems that four years and nine months of employment should count for something. At the very least, it suggests that prolonged firefighting is conducive to lung disease. Therefore, we find that the plaintiff established the presumption of a causal relationship between his disability and his work environment in that the evidence revealed the plaintiff suffered no disabling symptoms prior to his employment as a firefighter, and that there is both medical and circumstantial evidence indicating a reasonable possibility that his work environment caused, aggravated or accelerated the disease to produce his disability.
Consequently, it became the burden of the defendants to prove the absence of any causal relationship between the accident and/or work environment and the aggravation or progression of plaintiff's lung disease. Considering the evidence of this case we find the defendants failed to rebut the presumption of causation afforded to the plaintiff.

Extent of Disability
The plaintiff suffers from impaired respiratory function due to the scarring within the lungs caused by the pneumonia and abscess formation. Plaintiff is able to perform jobs which require light to moderate work. However, he is unable to perform the duties of a fireman, due to the possibility of a recurrence of his disabling respiratory disease.
Under these facts we find the plaintiff to be permanently and partially disabled since he is unable to perform the same duties in which he was customarily engaged when injured. See La. R.S. 23:1221(3). Consequently, plaintiff is entitled to benefits pursuant to La.R.S. 23:1221(3). In addition, plaintiff is entitled to recover medical bills and expenses.
However, we find plaintiff is not entitled to penalties and attorney's fees because the failure to provide benefits was not arbitrary and capricious. The onset of plaintiff's disease was subject to reasonable dispute and the required causal effect between the accident and/or work environment and the disability continues to be subject to considerable litigation. See Hammond, supra, and Hebert, supra.
For the reasons assigned the judgment of the trial court denying benefits is reversed and plaintiff is hereby awarded benefits as set forth hereinabove. Defendant *1048 is cast with costs both at the trial level and on this appeal.
REVERSED AND RENDERED.