STOKER, Judge.
Thonis Fontenot filed suit against his employer and the employer’s insurer to collect worker’s compensation benefits allegedly due because of a permanent partial disability sustained on the job. Fontenot appeals an award of benefits for 100 weeks under the specific loss provisions of LSA-R.S. 23:1221(4)(p). He claims that he is entitled to partial disability benefits for 450 weeks, as provided in LSA-R.S. 23:1221(3). We find reason to modify the judgment of the trial court to award 450 weeks of compensation.
Fontenot was working as a. construction carpenter for J.A. Jones Construction Company at a Conoco plant jobsite outside of Lake Charles on June 2, 1982. On that day, a chemical leak occurred at the Olin Chemical Company, across 1-10 from Cono-co. Phosgene liquid spilled out and evaporated, and the resulting toxic gas drifted to the area where Fontenot and several other J.A. Jones employees were working. The gas caused Fontenot immediate discomfort, including respiratory difficulty, watery eyes and weakness. Some of the effects have allegedly continued to date.
Fontenot returned to work after the incident, but was given lighter duties. He claims that he could no longer climb because he had trouble breathing and was generally weak. In August, 1982, the job at Conoco was completed and Fontenot was laid off. He asked the business manager of his labor union to send him only on jobs which required no climbing, but since 65 to 75% of a construction carpenter’s work involves climbing, Fontenot was unable to secure further work. He filed suit against J.A. Jones and Aetna Life & Casualty Insurance Company, J.A. Jones’s insurer, for benefits based on a partial permanent disability.
After trial, the judge concluded that Fon-tenot had sustained a permanent work-related impairment of this pulmonary function. He awarded Fontenot 65% of his wages during 100 weeks, as provided in LSA-R.S. 23:1221(4)(p).
The trial judge concluded that the inhalation of phosgene gas caused pulmonary deficiencies in the lungs of Fontenot. *186 We see no error in this factual finding. Dr. Jana Kamail, the only medical witness, stated that Fontenot had restrictive and obstructive defects of his lungs, meaning that the lungs were reduced in size, and that Fontenot had difficulty emptying them. Dr. Kamail was unsure whether the defects were attributable to the phosgene inhalation or to a bullet wound Fontenot had sustained several years earlier. However, the totality of the evidence, medical and lay, must be examined in determining whether to grant an award for disability. Crawford v. Al Smith P. & H. Service, Inc., 352 So.2d 669 (La.1977); Latiolais v. Home Ins. Co., 454 So.2d 902 (La.App.3d Cir.1984), writ denied 460 So.2d 610 (La.1984). Fontenot, his wife, his stepdaughter-in-law, and his former foreman gave testimony indicating that Fontenot had no complaints about his breathing before the phosgene inhalation. The evidence supports a finding of impaired lung function and of causation between the incident at work and his subsequent lung problems.
The trial judge was somewhat unclear in characterizing Fontenot’s impairment. He stated in his oral reasons for judgment that “it is clear that Mr. Fontenot did not lack the ability to do work of any reasonable character as he, in fact, continued to work for Jones Construction Company during the period of time from the date of the accident until his job terminated in August of 1982.” However, he also said that the uncontradicted testimony of Dr. Kamail showed that Fontenot “is partially disabled as a result of the accident and now suffers a pulmonary deficiency as a result of the accident.” The evidence showed that while Fontenot was kept on at J.A. Jones with lighter detail, his impairment has rendered him unemployable in his particular field since August of 1982. We note that plaintiff does not allege that he is unable to engage in any sort of work. He claims only that he is unable to perform duties of the same or similar character as those in which he was formerly engaged.
Two provisions of LSA-R.S. 23:1221, as they appeared at the time of this incident, are pertinent:
“(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training and experience, during the period of disability, but ... not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; ....”
"(4) * * *
“(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks.”
The statute gives no indication of the relationship between paragraphs (3) and (4) in a case where an impairment might also constitute a partial disability. Our Supreme Court analyzed the interaction between the two provisions in Jacks v. Banister Pipeline America, 418 So.2d 524 (La.1982). The court stated that paragraph (4) establishes a conclusive presumption that victims suffering the losses set forth in the schedule will sooner or later be permanently partially disabled. The two paragraphs *187 are parallel remedies designed to compensate an employee for his loss of earning capacity, and the claimant should have the benefit of the more favorable remedy when both are applicable. In a case such as Fontenot’s, where the claimant returns to work for a time, but then becomes unemployable because of his partial disability, the court in Jacks held:
“... he should be awarded compensation for the specific loss as a minimum with reservation of his right to recover under the partial disability provision in the event it proves to be the more favorable.
“If the employer is later required to pay the worker compensation for his partial disability, because it proves to be the more favorable remedy, the employer will be entitled to subtract the 100 weeks of compensation paid for the specific loss from the maximum number of weeks for which partial disability compensation is payable.”
Thus, Fontenot was entitled to the benefits provided under paragraph (4) during the time that he worked for J.A. Jones at his pre-injury salary. Once that job ended, his disability manifested itself in his inability to obtain further employment. From that point, he was entitled to benefits under paragraph (3), with a credit for the weeks of compensation paid under paragraph (4). His stipulated wages were $12 per hour, or $480 per week. Under LSA-R.S. 23:1202 A the maximum weekly compensation which plaintiff could be paid was sixty-six and two-thirds of the average weekly wage paid in all employment, subject to the Louisiana Employment Security Law. Under Subsection B of that statute the average weekly wage referred to shall be determined periodically by the administrator of the office of employment security. For the period during which plaintiff was injured the maximum weekly compensation to be paid was fixed at $183. This is the figure specified by the trial court in its judgment awarding compensation for 100 weeks. We hold that Fontenot is entitled to collect weekly benefits in the amount of $183 for a total period of 450 weeks, together with interest from the date of any installments unpaid dating from their due date until paid, subject to a credit for any payments already paid.
AMENDED AND AFFIRMED AS AMENDED.