YELVERTON, Judge.
The defendant-employer, J.A. Jones Construction Company, Inc. and its insurer, Aetna Life & Casualty Insurance Company, appeal an award of worker’s compensation benefits to plaintiff, Dallas Dugas, for partial disability under La.R.S. 23:1221(3), based on an accident when Dugas was exposed to phosgene gas. The defendants contend that Dugas’ symptoms were not caused by the exposure to phosgene, and that in any event plaintiff did not establish partial disability, at the most only an im *822 pairment of physical function of the lungs under R.S. 23:1221(4)(p), entitling him to compensation for no more than one hundred weeks.
We affirm the judgment of the trial court.
The accident happened on June 2, 1982, when Dugas, who was working for J.A. Jones Construction Company, Inc., in the Conoco Refinery in Westlake, Louisiana, was for several minutes exposed to phos-gene, a highly toxic gas. There is no dispute about the accident. For further details of that same accident and phosgene exposure that formed the basis for another worker’s compensation case appealed to this court, see Fontenot v. Aetna Life and Cas. Ins. Co., 487 So.2d 184 (La.App.3rd Cir.1986).
The first issue is whether Dugas’ symptoms were caused by the exposure to phos-gene.
According to his treating physician, who saw him soon after the accident, Dugas began immediately to suffer shortness of breath and other symptoms suggestive of restrictive lung defects. The treating physician, Dr. Jana Kaimal, is a specialist in pulmonary diseases. Dr. Kaimal treated plaintiff from soon after the accident through February 1984, a period of about 19 months. The main symptoms noted were shortness of breath and chest pain. He testified that plaintiff's complaints were consistent with someone who had been exposed to phosgene. He ran pulmonary function tests, two of which showed decreases in value. He ordered tests which showed that heart disease was not the cause of the plaintiff’s chest discomfort. Dr. Kaimal said that if a cardiologist had indicated evidence of heart disease, he would have accepted that as a “happy” explanation of plaintiff's symptoms. But the cardiologist said there was no evidence of heart disease. Chronic bronchitis was also ruled out. The objective findings suggested a restrictive as opposed to an obstructive lung defect. Although plaintiff once smoked, cigarette smoking, the doctor said, produces an obstructive rather than a restrictive defect. Asked what was his diagnosis, Dr. Kaimal frankly stated he did not know. He said he wished he could know what pulmonary function tests before the accident would have showed. Dr. Kaimal’s opinion was that given an absence of restrictive lung disease history before the accident, and the plaintiff’s condition now, he would have to attribute his restrictive lung disease now to that exposure to phosgene, as a reasonable medical probability.
Dr. Robert N. Jones of New Orleans testified by deposition for the defendants. He, too, was a specialist in pulmonary diseases. He saw plaintiff once. He found some functional respiratory impairment but it was his opinion that plaintiff’s symptoms were not caused by that one exposure to phosgene. He blamed cigarette smoking. In Dr. Jones’ practice he had examined but never treated a person who had been exposed to phosgene.
These were the only two doctors testifying in the case. Both of them testified that the evidence was not yet all in about phos-gene and its long term effects on humans. Both had an opinion. One was the treating physician and the other saw the plaintiff only once for evaluation purposes. The trial court declared in its written reasons that it accepted the opinion of Dr. Kaimal, the treating physician, over that of Dr. Jones. This is consistent with the jurisprudence in worker’s compensation cases that the testimony of a treating physician, who has had the benefit of repeated examinations and sustained observation of the injured person, is accorded greater weight than specialists who may have seen the claimant only briefly. Irvine v. Sentry Ins. Co., 415 So.2d 467 (La.App.1st Cir.1982).
The trial judge also made a credibility determination that plaintiff's symptoms and complaints were genuine and that they were sufficiently severe to disable him from performing the duties of his trade. An industrial construction carpenter, since the accident plaintiff has had to turn down 15 to 20 jobs that required high scaffold *823 work, an essential part of his regular trade. The trial court noted that his past work record was good and that he had an apparent high motivation to work. Although plaintiff could still do some work, the trial court found that since the accident he has been able to do only a small fraction of the regular work of an industrial construction carpenter — work which he could fully perform before the accident. The trial judge made an award based on partial disability in accordance with LSA-R.S. 23:1221(3) in effect on June 2, 1982, the date of the accident.
The trial court concluded that there was a causal connection between the phos-gene exposure and plaintiff’s disability. Under Louisiana law if a healthy worker suffers an accident at work and then becomes disabled it is presumed that there is a causal relationship between the accident and the disability as long as the medical evidence establishes a reasonable possibility of such a relationship. Savoie v. Fire Protection Dist. No. 1, 483 So.2d 1041 (La.App.3rd Cir.1985). The lay testimony supports the trial court’s determination that Dugas was healthy and able to do his customary work before the accident. The evidence supports a finding of impaired lung function and of causation between the exposure and plaintiff’s subsequent lung problems. See Fontenot v. Aetna Life and Cas. Ins. Co., supra.
The appellants argue further that if plaintiff proved anything at all, his condition amounted to no more than an impairment of a physical function of the lungs under R.S. 23:1221(4)(p), and not a partial disability. The same question was presented, and answered, in Fontenot v. Aetna Life and Cos. Ins. Co., supra. The distinction between an impairment of a physical function and a disability is that for a permanent partial disability there must be an appreciable diminution in the worker’s ability to perform in his regular job or a similar one, while for the permanent impairment of a physical function no disability need be found. Miller v. Pan American World Airways, Inc., 480 So.2d 477 (La.App.5th Cir.1985), writ denied, 482 So.2d 629 (La.1986). In the present case, plaintiff’s loss of earning power qualifies him for benefits under both the specific loss schedule and the partial disability provisions. That being the case, he is entitled to the more favorable of the two remedies. Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982). The question of disability is a factual one, and the finding of the trier of fact must be given great weight. Culp v. Belden Corp., 432 So.2d 847 (La.1983). The trial judge found that plaintiff had a permanent partial disability, a finding with which we agree.
For these reasons, the judgment of the trial court is affirmed, at appellants’ costs.
AFFIRMED.