545 So.2d 538 (1989)
Gary J. GUIDRY
v.
BOH BROTHERS CONSTRUCTION COMPANY, INC.
No. 88-CA-556.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1989.
On Rehearing June 7, 1989.
*539 Eavelyn T. Brooks, New Orleans, for defendant-appellant, Boh Bros. Const. Co.
Pat M. Franz, Metairie, for plaintiff-appellee, Gary J. Guidry.
Before BOWES, GAUDIN and GOTHARD, JJ.
BOWES, Judge.
Defendant-appellant, Boh Brothers Construction Company, Inc. (hereinafter Boh Bros.) appeals a judgment in favor of plaintiff-appellee, Gary J. Guidry (hereinafter Guidry) in a suit in worker's compensation. Guidry answers the appeal asking for penalties, attorney fees and interest. We revise and, as revised, affirm.
Guidry was an employee of Boh Bros. when he was injured on June 4, 1986. While at a job site, Guidry was in the process of attempting to pull a trailer with a bulldozer. At one point, the trailer almost hit the bulldozer and Guidry put his hand out to stop it when his hand became wedged between the bulldozer and trailer, crushing it. Guidry sustained serious injuries to his hand, and was in treatment for several weeks. Guidry received compensation payments for four weeks. He was initially treated by and under the care of Dr. Robert Segura, orthopedic surgeon, who released him in early July, 1986, to attempt to return to work but, after some weeks of trying, Guidry was unable to handle the bulldozer or his former duties. However, Dr. Segura continued to treat Guidry, seeing him 12 times between June 5 and October 2, 1986. Concerned about his lack of progress, Guidry requested a second opinion and was referred to Dr. Harold Stokes, who generally agreed with Dr. Segura's medical opinion. On August 8, 1986, Boh Bros. fired Guidry from their employment.
In January, 1987, Guidry began treatment with another orthopedic surgeon, Dr. Russell Levy. Dr. Levy felt that Guidry was unable to resume his former employment, and Boh Bros. was so notified. Compensation payments were not resumed, and *540 this lawsuit was subsequently filed. After trial on the merits, the trial court issued judgment in favor of plaintiff in the following particulars:
1. That Gary Guidry be and is hereby found to be residually imparied [sic];
2. That Gary J. Guidry is permanently partially disabled entitling him to disability and supplemental earnings benefits;
3. That there be judgment in favor of plaintiff and against defendant in the just and true sum of TWENTY-THREE THOUSAND, ONE HUNDRED FIFTY-TWO AND 23/100 ($23,152.23) DOLLARS past due benefits.
4. Additionally, that there be judgment in favor of plaintiff and against defendant in the sum of TWO HUNDRED FIFTY-FOUR AND NO/100 ($254.00) per week beginning February 24, 1988, and weekly thereafter;
5. That this judgment is subject to any credits for amounts previously paid.
6. That court costs be and are hereby assessed against the defendant.
On appeal, Boh Bros. urges that the evidence did not support the finding that plaintiff was permanently partially disabled as a result of his work-related accident and, further, that it was error for the court to fail to reduce the award or credit defendant for unemployment compensation benefits which Guidry received during the period of disability.
Guidry answered the appeal and urges that the court erred in failing to award penalties, attorneys' fees, and interest for the past-due payments, which Guidry contends were arbitrarily denied.
LIABILITY
The medical evidence relative to Guidry's disability was submitted by the depositions of Drs. Robert Segura, Harold Stokes, and Russell Levy, all experts in the field of orthopedic surgery. Immediately after the accident, Guidry was taken to the emergency room at Methodist Hospital, where he was treated and released. On the following day, Guidry was examined by Dr. Segura, who diagnosed a contusion abrasion of the right mid-third forearm, hand and wrist, with no evidence of fracture. Guidry was advised by Dr. Segura not to return to any work which involved use of the injured arm. An electromyographic study and a nerve conduction study was performed, but tests showed no abnormalities. Plaintiff received physical therapy consisting of whirlpool, ultrasound, massage and exercises, and, in early July, 1986, he was released to return to work without restrictions, Dr. Segura being of the opinion that restrengthening of the arm would be directly related to the amount of use of the arm. Guidry continued to experience pain and weakness, and continued to see Dr. Segura through October, 1986. By August, Dr. Segura felt that the injury had healed, but, because of Guidry's concern, Guidry was referred to Dr. Harold Stokes for a second opinion. At the last visit to Dr. Segura in October, Guidry continued to complain of swelling and weakness in his hand; Dr. Segura felt that there was nothing further to be done for Guidry; and plaintiff agreed to follow up with Dr. Stokes.
Dr. Stokes examined Guidry in August, 1986. He diagnosed a minimal fibrosis on the dorsum of the injured hand, but found that Guidry had excellent strength and good functional use of the right hand. He saw nothing that required active treatment and felt that Guidry could engage in unrestricted activity. Eventually Dr. Stokes assigned a partial permanent impairment of less than 5%. Guidry returned for evaluation in October of 1986, at which time the diagnosis of Dr. Stokes remained unchanged. Dr. Stokes examined Guidry only twice and did not treat him at all.
In January, 1987, Guidry consulted Dr. Russell Levy, an orthopedic specialist. Dr. Levy's initial impression was that Guidry had sustained a sprain in the second carpometacarpal joint and would probably develop arthritis in that area; further, Dr. Levy felt that Guidry had had an injury to the sublimis musculature in the forearm, and that physical therapy would help in rebuilding the remaining musculature. Dr. Levy performed a number of tests and discovered *541 a lost of about 50 to 60 per cent of strength in the arm. Guidry was treated with anti-inflammatory medication, and underwent physical therapy, including light weight-lifting. Guidry was again tested by Dr. Levy in September of 1987, and again exhibited a 50 to 60 per cent loss of strength.
Between January and September, 1987, Dr. Levy did not feel that Guidry was able to return to his former employment at all. Finally, Dr. Levy gave a disability rating of 30% to Guidry's right arm. He felt that Guidry could perform light manual labor, but could not operate heavy equipment due to his loss of strength and flexion. He could not perform heavy repetitive movements and Dr. Levy felt that operating heavy equipment for long periods of time was probably dangerous.
Guidry testified that during the first week after the accident, he was not able to return to work at all. When he did return, he was unable to handle the job due to swelling and pain in his hand and arm. "I couldn't control the blade levers ...". Because he was unable to operate the machinery properly, he could not keep up and Boh Bros. "laid him off" on August 11, 1986. Boh Bros. did not offer him light duty or other work. He tried several times to obtain work, such as driving a truck or running a bulldozer, and was unable, because of pain and weakness in the arm, to perform the jobs. Guidry testified that his education stopped at the seventh grade, when he quit school at age 16. He has been a heavy equipment operator all of his working life and is untrained in any other fields.
Pee Wee Guidry, plaintiff's cousin, and owner of Guidry's Truck and Dozer Service, testified that plaintiff tried to work for him, and attempted to grade a parking lot, but was unable to operate the bulldozer. The grading was uneven, and plaintiff's arm swelled and hurt as he operated the machine, and Pee Wee Guidry had to discharge his cousin from his employment.
The finding of disability within the framework of the worker's compensation law is a legal rather than purely a medical determination. The claimant has the burden of proving to a legal certainty, and by a reasonable preponderance of the evidence, the nature and extent of a disability. In a particular case the totality of the evidence, both medical and lay testimony, must be examined by the trial court in making its determination on the question of disability and it is the function of the trial court to assess the weight to be accorded such testimony. The opinion of a physician or other medical expert does not necessarily determine a legal disability and the trial court may accept or reject the opinion expressed by a medical expert depending upon what impression the qualifications, credibility and testimony of that expert makes upon the court. As a general rule, the testimony of a treating physician should be given more weight than that of a physician who examines a claimant for diagnostic purposes.
Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App. 2 Cir.1987). Also Batiste v. Pointe Coupee Constructors, 401 So.2d 1263 (La.App. 1 Cir.1981); Ewell v. Schwegmann Giant Super Markets, 499 So.2d 1192 (La.App. 5 Cir.1986).
In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony. Holiday v. Borden Chemical, 508 So.2d 1381 (La.1987). Defendant presented no witnesses other than Drs. Segura and Stokes and no evidence directly contradictory or throwing suspicion on plaintiff's testimony, such as video tapes showing him using his arm without restriction or any other similar contradictory evidence.
The reasons for judgment disclose that the trial court, after considering all the testimony, both medical and lay, concluded that Guidry is permanently partially disabled in accordance with Dr. Levy's disability rating. Because these positive findings were the result of extensive and detailed medical testing by Dr. Levy, a well known orthopedic expert, during a lengthy *542 period of treatment, and because he was the treating physician for the longest period of time, we find no manifest error in this determination. The only really directly contrary medical opinion was Dr. Stokes, who did not treat the plaintiff at all. It is the function of the trial court to determine the weight to be accorded to the medical and lay testimony, and his factual determination is entitled to great weight and should not be disturbed on appellate review unless it is clearly wrong. Ewell, supra. Finding no clear error, we affirm the holding of the trial court that appellee is permanently partially disabled.
AWARD OF WORKER'S COMPENSATION
Appellant's second assignment of error must be discussed in context with the benefits legally due Guidry, and the amounts granted in the judgment of the trial court appear to us to be clearly in error in certain respects.
We interpret the judgment as awarding Guidry both disability benefits and supplemental earnings benefits; that is, he was granted compensation benefits under LSA-R.S. 23:1221(3) and (4). We note that R.S. 23:1221(3) is the supplemental earnings benefits clause and R.S. 23:1221(4) is the permanent partial disability clause, with scheduled losses delineated therein.
R.S. 23:1221(3) states, in pertinent part:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
R.S. 23:1221(4) states, in pertinent part:
(4) Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:

. . . . .
(f) For the loss of an arm, sixty-six and two-thirds percent of wages during two hundred weeks.

. . . . .
(o) In all cases involving a permanent partial anatomical loss of use or amputation of the members mentioned hereinabove, compensation shall bear such proportion to the number of weeks provided for herein for the total loss of such members as the percentage loss or impairment to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.
In Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982), our Supreme Court discussed the necessity of electing the appropriate provision under which the employee may recover:
The statute does not explicate the relationship between the specific loss schedule and the total and partial disability provisions. In a case in which a specific loss also results in total or partial disability for the worker, the act does not give either remedy priority or state whether the remedies are cumulative or optional. The interaction of judicial opinions and legislative amendments over the lifetime of the act presents a checkered pattern of interpretations on the question of disability vis a vis schedule loss provisions. W. Malone & H. Johnson, Workers' Compensation in 13 Louisiana Civil Law Treatise, § 252 (1980); Comment, The Conflict Between the Disability and Specific Injury Clauses of the Louisiana Workmen's *543 Compensation Act, 11 Tul.L.Rev. 86 (1936).
The prevailing interpretation is that an employee may not recover compensation both for a total or partial disability and for a specific loss but he may recover for one or the other, the employee being permitted recovery under whichever provision affords him greater compensation.3 This rule is a workable one in cases which present a clear-cut choice between remedies affording fixed amounts of compensation.
The general disability provisions and the specific loss provisions, such as the award of 100 weeks of compensation for the loss of an eye, therefore, are parallel remedies designed to compensate an employee for his loss of earning capacity. The pervasive canon of statutory construction is that, where two remedies are created side by side in a statute, the claimant should have the benefit of the more favorable.
See also Christoff v. Bergeron Industries, Inc., 474 So.2d 999 (La.App. 5 Cir.1985); Dugas v. J.A. Jones Const. Co., Inc., 491 So.2d 821 (La.App. 3 Cir.1986); Lemoine v. Brice Bldg. Co., Inc., 465 So.2d 57 (La.App. 4 Cir.1985).
Therefore, Guidry cannot recover under both R.S. 23:1221(3) and (4), but may recover under the most favorable remedy. R.S. 23:1221(4)(o ), cited above, requires that any recovery by Guidry under that section be reduced proportionately by the percentage of disability applied to the number of weeks provided for the particular loss. Therefore, because Guidry's disability was fixed as 30%, Guidry may recover compensation benefits for 30% of 200 weeks, or 60 weeks. Counsel stipulated at trial that the applicable compensation rate would be $254.00 per week. It follows then that under R.S. 23:1221(4), Guidry would be entitled to compensation equalling $254.00 per week for 60 weeks, or $15,240.00.
Guidry testified at trial that, after being laid off by Boh Bros., he has been unemployed (the attempt to work for Pee Wee Guidry earned him approximately $100.00 but this figure was not documented in the record). Under R.S. 23:1221(3):
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
The burden is on the employer to show that such work is available to the employee. Valley v. American Ins. Co., 510 So.2d 449 (La.App. 3 Cir.1987); Gaspard v. St. Paul Fire & Marine Ins. Co., 483 So.2d 1037 (La.App. 3 Cir.1985); Batiste v. Hopeman Bros., Inc., 508 So.2d 922 (La.App. 4 Cir.1987.)
Boh Bros. offered absolutely no evidence of any jobs available to Guidry, which he was physically able to perform and which was offered or tendered by any employer. Guidry testified that in order to qualify for unemployment compensation, he registered for employment, for lighter work, but received no offers. Clearly, Boh Bros. did not carry its burden of proof that work was available to Guidry under R.S. 23:1221(3)(c)(i). Therefore, Guidry qualifies for supplemental earnings benefits as he does not now earn 90% of his wages that he was earning at the time of injury. R.S. 23:1221(3)(a).
The $254.00 compensation benefit stipulated to by counsel appears to be the rate or amount of weekly compensation paid to plaintiff during the four weeks of his temporary total disability, before his attempt to return to work. It is not, however, the *544 proper figure by which plaintiff benefits under R.S. 23:1221(3). That figure must be 74% of the difference between 90% of the wages earned by plaintiff at the time of his injury and the wages he is presently able to earn. As explicated above, defendant made no showing that plaintiff is able to earn anything. Therefore, Guidry is entitled to 74% of 90% of his former earnings for 520 weeks, less those weeks for which defendant is due credit as follows hereinafter.
Computing his former earnings according to R.S. 23:1021(10), Guidry earned $14.30 an hour (as shown by his employment record entered into evidence); using the 40-hour work week in accordance with R.S. 23:1021(10), Guidry earned $572.00 per week. Since, under R.S. 23:1221(3), monthly wages are 4.3 times the average weekly wage, his average monthly wage would equal $2,459.60. Ninety per cent of that figure is $2,213.64. Seventy-four per cent of that figure equals $1,638.09. Reducing this figure back to a weekly benefit (by dividing by 4.3), we conclude that plaintiff is entitled to $380.95 per week for 520 weeks maximum.
We are of the opinion that R.S. 23:1221(3) is clearly the more favorable remedy, and the one under which Guidry will therefore be awarded judgment.
Boh Bros. paid Guidry $254.00 for four weeks, for a total of $1,016.00. Therefore, the four weeks in which compensation benefits were paid should be credited to the employer and deducted from the maximum of 520 weeks. R.S. 23:1221(3)(d)(ii). Jacks, supra.
Further, we conclude appellant is correct in asserting that plaintiff was not eligible for compensation benefits during those weeks for which he received unemployment compensation, as R.S. 23:1225(B) states:
No compensation benefits shall be payable for temporary or permanent total disability or supplemental earnings benefits under this Chapter for any week in which the employee has received or is receiving unemployment compensation benefits.
Guidry received unemployment compensation for 26 weeks, from September 13, 1986, to March 13, 1987. During that period of time, Guidry was ineligible for supplemental earnings benefits and Boh Bros. must be allowed credit for this 26 weeks of unemployment compensation. See Young v. State Farm Fire & Cas. Co., 511 So.2d 15 (La.App. 3 Cir.1987); Green v. Jackson, supra.
Supplemental earnings benefits due for July and August of 1986 are computed as follows:

$2,213.64 (90% of Guidry's average monthly wages)
- 929.05 (amount Guidry earned in July, 1986)
________
1,284.59
× 74%
_________
$ 950.59 - supplemental earnings benefits due for July 1986
$2,213.64
- 350.23 (amount Guidry earned in August, 1986)
_________
$1,863.41
× 74 %
_________
$1,378.92 - supplemental earnings benefits due for August 1986

Thereafter, Guidry is due the sum of $380.95 per week as computed hereinabove as supplemental earnings benefits.
PENALTIES AND ATTORNEY FEES
An assessment of penalties is proper for the nonpayment of compensation benefits unless the nonpayment results from *545 conditions over which the employer or insurer had no control or unless the employee's right to such benefits had been reasonably controverted. LSA-R.S. 23:1201 E.5 The claimant's right to such benefits will be deemed to have been reasonably controverted if the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Theriot v. American Employees Ins. Co., 482 So.2d 648 (La.App. 3d Cir.1986).
An award of attorney fees is proper where the failure to make compensation payments is found to be arbitrary, capricious or without probable cause. LSA-R.S. 23:1201.2.6 Whether liability for attorney fees is proper depends primarily upon the facts known to the employer or insurer at the time of the action. Hughes v. General Motors Guide Lamp Div., 469 So.2d 369 (La.App. 2d Cir.1985). Green v. Jackson, supra.
Dr. Segura released plaintiff to return to work in early July, 1986, at which time Guidry attempted to do so. Boh Bros. had no medical information to contradict Dr. Segura's opinion. The reports of Dr. Stokes confirmed this physician's opinion that Guidry was not disabled from returning to his former job.
In January, 1987, a report by Dr. Levy was forwarded to defendant; but this report did not discuss disability as such or make a disability rating.
However, in April of 1987, Boh Bros. did receive a report from Dr. Levy in which he reported a permanent partial impairment to Guidry's arm. Dr. Levy also declared that Guidry was temporarily totally disabled from his former occupation and would be eligible for some lighter work.
An insurer is required to make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La. 1983). If, subsequent to an initial optimistic report, an insurer receives medical information indicating continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits. Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.,1976). Penalties and attorneys' fees are awarded when an insurer discontinues compensation benefits without probable cause. Guillory v. Travelers Insurance Co., 294 So.2d 215 (La., 1974). Johnson v. Ins. Co. of N. America, 454 So.2d 1113 (La.1984).
Given the facts known to the employer, medical and otherwise, did the employer or insurer have a reasonable basis to believe that compensation benefits were not due? Or, as the Third Circuit summarized the question:
...did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each worker's compensation case. Theriot v. American Employees Ins. Co., 482 So.2d 648 (La.App. 3 Cir. 1986).
It appears from the record that after April 23, 1987, the date of Dr. Levy's evaluation of the partial disability of Guidry, no further medical information was received or sought by Boh Bros. which would counter that assessment and the medical opinion of Dr. Levy. Therefore, after that time, Boh Bros. had no reasonable basis to continue to refuse to pay compensation benefits to Guidry, and the trial court should have awarded penalties of 12% on all past-due payments after that date as provided by LSA-R.S. 23:1201.2. such failure to reinstate payments fourteen days after the report of April 23rd was also arbitrary, capricious and without probable cause, and further subjects Boh Bros. to payment of attorney fees to Guidry under the worker's compensation law, which should have also been awarded by the trial court.
An examination of the record convinces us that an award of $5,000.00 will fully and fairly compensate plaintiff for his attorney fees.
*546 In addition, Guidry is clearly entitled to an award of legal interest on each weekly installment from its due date until paid. Bordelon v. Vulcan Materials Co., 472 So.2d 5 (La.1985).
For the foregoing reasons, the judgment is revised as follows:
1. Gary J. Guidry is permanently partially disabled.
2. Gary J. Guidry is entitled to supplemental earnings benefits as the more favorable basis of relief.
3. There is judgment in favor of Gary J. Guidry in the amount of $2,329.51, plus $380.95 per week beginning the first week of September, 1986, less thirty weeks credited to Boh Bros., as provided hereinabove.
4. Statutory penalties of 12% are assessed on each past due weekly payment beginning 4 days after April 23, 1987.
5. Legal interest is assessed on the sums due from July and August, 1986, and on each weekly installment from its due date until paid.
6. Attorney fees are hereby assessed in the amount of $5,000.00.
Defendants are to pay all costs of these proceedings and this appeal.
REVISED AND, AS REVISED, AFFIRMED.
GAUDIN, Judge, concurring in part and dissenting in part.
I concur in the foregoing revision of the district court judgment except for the award of statutory penalties and attorney fees which the trial judge had properly denied.

ON REHEARING
In our original opinion, this court determined that Mr. Guidry is permanently partially disabled and awarded weekly benefits to plaintiffappellee in the amount of $380.95 per week beginning the first week of September, 1986, less thirty weeks credited to Boh Brothers, as provided elsewhere in the opinion. We also awarded statutory penalties of 12%, legal interest, and attorney fees.
We granted a limited rehearing in this matter to reconsider the single issue of the amount of weekly benefits due. The amount of $380.95 originally awarded is in violation of LSA-R.S. 23:1202(A), which states in pertinent part:
For injuries occurring on or after July 1, 1983, the maximum weekly compensation to be paid under this Chapter shall be seventy-five percent of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law, and the minimum compensation for total disability shall be not less than twenty percent of such wage, said maximum and minimum to be computed to the nearest multiple of one dollar. There shall be no minimum compensation for benefits payable pursuant to R.S. 23:1221(3) or (4). In any case where the employee was receiving wages at a rate less than the applicable minimum compensation, the compensation shall be the employee's "wages".
According to the State of Louisiana, Department of Labor, Office of Employment Security, the average weekly wage for the time period beginning September 1, 1985, through August 31, 1986, was Three hundred thirty-nine dollars and 24/100 ($339.24). Seventy-five percent (75%) of that amount equals Two hundred fifty-four dollars and 43/100 ($254.43). Rounding that figure off to the nearest dollar, as mandated by R.S. 23:1292, the correct amount which should have been awarded to Mr. Guidry is Two hundred fifty-four dollars ($254.00) per week, as the maximum amount permitted by statute.
Therefore, on rehearing, we amend our original opinion to reflect that appellee is entitled to weekly benefits of $254.00. All other portions of the opinion remain in full force and effect.